# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DAVID A. SMILEY,                    )
                                   )
            Plaintiff,              )
                                   )        C.A. No. 1:07-005-SLR
        V.                          )
                                   )
DIAMLER CHRYSLER,                   )        JURY TRIAL DEMANDED
                                   )
            Defendant,              )
                                   )

## **PLAINTIFF DAVID A. SMILEY'S OPENING BRIEF**



David A. Smiley, Pro se
814 B Village Circle
Newark, DE  19713
(302) 444-4872
(302) 981- 9421

Dated: May 14, 2008

# TABLE OF CONTENTS

STATEMENT AS TO THE NATURE AND STAGE OF THE
PROCEEDING…………………………….................………………...2

SUMMARY OF ARGUMENT…………………………….................4

STATEMENT OF FACTS…………………………….......................2

ARGUMENT……………………………................................................4

     I.    Is the Plaintiff a member of a Protected Class……………...6

     II.    Is the Plaintiff Qualified for Position………..……...……...8

     III.    Did the Plaintiff suffer an Adverse Employment Action…...9

     IV.    Do the circumstances give rise to an Inference of
         Discrimination……………………………...........................10

     V.    Was the Plaintiff subjected to an unfair employment practice
         Pursuant to 42 U.S.C. 2000e et seq. …..……………...…...13

     VI.    Is an Equal Protection Claim under the XIV amendment
         available against a private entity….………..…………….…15

     VII.    Is the Plaintiff a member of a Protected Class..………….....15

     VIII.  Was he qualified to hold the position from which he was
         terminated and his job performance was satisfactory……...16

     IX.    Had he suffered an adverse employment action………..…16

     X.    Did the adverse action occur in circumstances giving rise to an
         inference of discrimination because of his membership in the
         Protected Class…………………………….......................17

     XI.    Is there an exception to the at-will employment doctrine….20

I

XII.    Are Punitive Damages recoverable on a breach of Covenant
        Claim…………………………….....................................20


XIII.   Do claims of retaliation in violation of Tit. VII or Sections
        1981 and 1981a apply……………………………….........21

XIV.    Did Defendant take adverse action against the Plaintiff…..21

XV.     Does a casual link exist between the adverse employment
        action taken by the defendant and the Protected activity
        engaged by the Plaintiff………………………………........22


CONCLUSION…………………………….........................................23

# TABLE OF AUTHORITIES

1). <u>Farrell v. Planters Lifesavers</u>, 206 F.3d 271-279 (3d Cir. 2000)…..Pg. 21

2). <u>Knott-Ellis v. Delaware Department of Correction,</u> Del. Supr., No. 826, 2000, Robinson, J. (August 14, 2001). Pg. 5

3). <u>McDonnell Douglas,</u> 411 U.S.C. § 792

4). <u>McKnatt v. State of Delaware Dept. of Public Safety,</u> Del. Supr., No. 1659, 2002, Robinson, J. (June 23, 2004). Pg. 4

5). <u>Thurston v. Liberty Mut. Ins. Co.,</u> 16 F. Supp. 2d441; 448 (D. Del. 1998). Pg. 18

6). <u>Schatzman v. Martin Newark Dealership, Inc.</u> Del. Supr. No. 731,1999, Farnan, J. (August 14, 2001). Pg. 16

7). <u>Shuster v. Derocili,</u> 2001 WL 682105 (Del. June 15, 2001)

8). <u>Wright v. Pepsi Cola Company,</u> Del. Supr., No 563, 2002, Farnan, J. (January 29, 2003). Pg. 12

## STATUTES

Title VII of 1964 Civil Rights Act….………………………………...........4

42 U.S.C § 2000c.…………………………………......................................11

Section 1981…….…………………………...............................................19

## NATURE AND STAGE OF THE PROCEEDING:

On 4 JAN 07, Plaintiff David A. Smiley filed a civil case against the Daimler Chrysler Corporation in the United States District Court for the District of Delaware; in Wilmington, DE pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.

A similar complaint was filed against the UAW Local 1183 on 7 APR 08, for violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000 et seq. In addition, Del. Code Ann. tit. 19 § 710.

## STATEMENT OF FACTS:

The Plaintiff, David Smiley began his employment with the Defendant Daimler Chrysler, on 6 APR 89. On or about 9 NOV 03 plaintiff was injured while performing his normal job duties as a Technician1 door fitter while assigned to the Body Shop.

Upon a diagnoses of over use syndrome, and medial/lateral epicondylitis of his right elbow and ulner nerve damage of his right arm. Plaintiff began treatment therapy with Dr. Peter Bandera from 3 AUG 04, initially at two times per week while still on active roll and in addition, continuing to perform tasks associated with his job requirements Defendant

allowed the Plaintiff to leave the plant facility to under go therapy but did not compensate the Plaintiff for neither lost time or travel while engaged in therapy.

After several weeks of therapy Plaintiff's injured right elbow remained swollen while performing a PQX job which prompted doctor to place the plaintiff on temporary disability with the recommendation that he not return to work; physician then issued corresponding documentation relating to Plaintiff's treatment.

Prior to 4 MAY 05 the Plaintiff did make all scheduled appointments with the plant medical department. The Plaintiff received a certified letter dated 6 MAY 05 from the Defendant requesting the plaintiff to return to the plant no later than 13 MAY 05 for a rescheduled appointment with the plant medical department, in addition, the Plaintiff was to substantiate all medically related absences from the period of 18 FEB 05 to 13 MAY 05. (See: D.I. _,Ex. D.)

In response to the correspondence received, Plaintiff David Smiley arrived to the plant at or around 09:15 a.m. the morning of 13 MAY 05, and submitted a photo static copy of the original notes provided by his treating physician to substantiate all treatment dates in question. . (See: D.I._, Ex.

E.)

After reviewing the documentation presented by the plaintiff, it was discovered that the physician did not include the proper DX code on his notes, Dawn Ford presented a reinstatement requirement form, which had been altered to reflect a substantiation form for endorsement by the Plaintiff, of which he refused. (See: D.I._, Ex. O.) Plaintiff then left the facility to obtain the necessary code, which reflected the nature of treatment. (See: D.I. _, Ex. G.)When he arrived to his doctor's office, his physician was not present but the proper DX code was obtained through an employee of the doctors' office, which was written upon another copy of the original physician notes presented by the plaintiff. (See: D.I._, Ex. H.)   The Plaintiff returned to the plant at or around 11:30 a.m. with a copy of the original notes provided by his physician

affixed with the proper DX code, and forwarded this information by way of another employee Angelina Fleming, to Human resources employee Dawn Ford. That same day Defendant's employee Dawn Ford generated a memo to Dan Mikialinko in the plants Human Resources Department; informing him that the Plaintiff was terminated as of 13 MAY 05 and she did not give David Smiley an additional 24 hours, "…because he was trying to take

advantage". (See: D.I. _, Ex. P.)

On 16 MAY 05 the plaintiff was informed by a member of the human resource department at Chrysler to contact, his shop steward because his employment was terminated on 13 MAY 05. (See: D.I._, Ex. )Plaintiff then requested that grievance be filed against the Defendant on his behalf.

It was later learned that an accusation of forgery of the physician notes presented by the Plaintiff was made by the Defendant's employee Dawn Ford to H.R. personnel and the Plaintiff's Union Shop Steward.

Because the Plaintiff received no reply after numerous calls and messages left for UAW representatives in regards to if or when a grievance was filed or of its status, the Plaintiff subsequently filed a petition with the E.E.O.C. on 2 AUG 05, charging the Defendant with discrimination. During its investigation the EEOC sent a questionnaire to John Rutherford, in which states to have no knowledge of Mr. Smiley's situation, but does not direct them to interview the second shift union steward John Mahavlichek with regards to the incident. (See: D.I. , Ex. N.) The E.E.O.C. issued a finding of no cause and presented a right to sue letter; Plaintiff then appealed this decision with the Philadelphia District E.E.O.C., which again found no cause but issued a right to sue letter.

4

## SUMMARY OF ARGUMENT:

Do Defendants actions satisfy the elements necessary to provide a prima facie case for discrimination, according to both Title VII of the Civil Rights Act, 42 U.S.C. § 2000et seq. and Del. Code Ann. tit. 19 § 710 et seq.?

The requirements to establish proof of a prima facie case of discrimination are (1) the plaintiff is a member of a protected class; (2) he is qualified for the position; (3) the plaintiff suffered an adverse employment action; (4) the circumstances give rise to an inference of discrimination.

## ARGUMENT:

### I. IS THE PLAINTIFF A MEMBER OF A PROTECTED CLASS?

Yes, In the instant case, the Plaintiff David Smiley is an African American male Technician 1 Body Shop Fitter employed with the Defendant for sixteen years, until his termination

Similarly, in McKnatt v. State of Delaware Department of Public Safety, De. Supr., No. 1659, 2002, Robinson, J. (June 23, 2004)., Plaintiff McKnatt is a Caucasian female that filed suit with the E.E.O.C. and in the District court alleging employment discrimination based on sex, hostile work environment

5

and retaliation.

In <u>Knott-Ellis v. Delaware Department of Correction,</u> De. Supr., No. 826, 2000, Robinson, J. ( August 14, 2001)., an African American female working for the Department of Correction, filed suit alleging discrimination based upon her race and sex pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 2000e <u>et</u> <u>seq.</u>

The Plaintiff Knott-Ellis alleges that on 31 DEC 98, her subordinate Sgt. Wright had become embroiled in an altercation, when the Defendant became verbally aggressive and shook her physically. Because of the incident, the defendant Wright was issued a 10-suspension and transferred to another facility; the Lt. filed for worker's compensation because she allegedly sustained physical and psychological injuries. Based upon an assessment of total disability by the DOC, Lt. Knott received over $2000 from worker compensation from the period of 9 JAN 99 to 17 FEB 99.

On 23 MAR 99, responding to a letter from the DOC requesting that she take a psychological treatment to verify her fitness for a return to duty, Lt. Knott-Ellis expressed to DOC officials that she was unable to return to work because of the incident. A gender discrimination charge was filed with the E.E.O.C. on 5 MAY 99, in addition to a hostile work environment and

retaliation over the incident with Sgt. Wright and her promotion to Lieutenant. The complaint filed with the E.E.O.C., dismissed her claims and issued a right to sue letter.

An accommodation was recommended by her physician the defendants assigned the plaintiff to a light duty assignment. The next day the plaintiff was informed that she was not able to perform "even routine and non-demanding job tasks" and should not return to work without documentation, which allowed her to do so. Id.

In a letter, the plaintiffs' psychiatrist assessed her mental condition as "regressed" and that she was unable to return to work of any kind. Additional treatment was administered and the plaintiff was assigned to a prison counselor position with no loss in pay. The plaintiff declined the position and applied for and received a disability retirement pension.

The Plaintiff has filed a complaint with the E.E.O.C., in which she alleges retaliation by the defendants for her prior claims of discrimination based upon her race and sex because of the defendant's failure to employ her, failure to promote her, and forcing her into disability after seventeen years of service. Id. at 6.

## II. IS THE PLAINTIFF QUALIFIED FOR THE POSITION?

Yes, David Smiley was a Tech 1 for a period of six years, his job was the right side door fitter, he was qualified as a pool person which is the ability to perform all of the operations on his team; in April of 2004 the Plaintiff received the Daimler Chrysler Vice President's Award for his help in containing a potentially costly defect from reaching the public.

Yes, in McKnatt, the plaintiff began working as a recruit trooper for the Delaware State Police on 14 JUL 89; she had attained the rank of Senior Corporal and was assigned to the Drug Awareness Resistance Education unit.

Yes, Plaintiff Knott-Ellis began her employment with the Department of Corrections in April 1983, as a prison counselor. She was promoted to Lieutenant Correctional Officer at the Plummer Community Correctional Center.

**III.    DID THE PLAINTIFF SUFFER AN ADVERSE EMPLOYMENT ACTION?**

Yes, the plaintiff in this case did suffer an adverse employment action because on 13 MAY 08 his employment was terminated by the Defendant.

Similarly, in McKantt, the Plaintiff had been passed over for a promotion because she did not receive the recommended support from her

7

Captain and her Sergeant. She lost her appeal and was allegedly verbally harassed by her Captain. She was then required to attend a mental evaluation to assess her fitness for duty.

No, the court declines to characterize "medically required reassignments as adverse". <u>Knott-Ellis,</u> at 10. Conversely, the plaintiff left her position because of poor health, prior to that she received workers compensation and received an accommodated light duty assignment, which she could not perform. Additionally, the plaintiff refused to accept a different position at the same rate of pay.

## IV. <u>DO THE CIRCUMSTANCES GIVE RISE TO AN INFRENCE OF DISCRIMINATION?</u>

Yes, the seven requirements for substantiation of medically related absences as set forth by the Newark Assembly Plant Information Notice; dated 1 MAR 05 issued by H.R. Manager V. Stout are:

1). The date the statement was written.

2). Date of treatment to include start and end dates of medical coverage.

3). A return to work date.

4). Confirmation that the employee was totally disabled, totally

incapacitated, or unable to work.

5). The diagnosis code for the absence (DX code).

6). The attending physician must sign the statement, no rubber stamps
   permitted.

7). The statement must contain the physician's address and phone
number. (See: D.I. _, Ex. F.)

The notice produced by the Defendant's Human Resources
department, does not state that an employee must provide his original
physician's note; although the Defendant has accepted photo static copies of
Mr. Smiley's physicians notes in the past.

Yes, in <u>McKnatt,</u> the inference of discrimination was supported by the
fact the Plaintiff is the only member of her academy class to not be
promoted in 2000. <u>Id</u>. At 9.  Upon learning that she was passed over for a
promotion, the Plaintiff appealed the decision with her Captain and
Sergeant. After a State Police review board denied her appeal, the Plaintiff
filed a sexual harassment claim with the State Police Internal Affairs
department.

No, the court following <u>Sanchez v. Henderson</u>, 188 F. d 740 (7th Cir.
1999), "expressed serious doubt " that an employer's action of transferring

9

an employee to accommodate employee's request for light duty could be considered an adverse employment action, in absence of less pay responsibility, prestige or opportunity for advancement.

The Plaintiff David Smiley has satisfied all of the requirements to find that he was discriminated against by the Defendant Chrysler. Because on APR 05, Plaintiff Smiley at the advice of his doctor was taken out of work while performing an accommodating operation; he responded to a notice sent by certified mail notifying him that he had missed a 2 MAY 05 appointment with the plant medical department, additionally, he had to substantiate all absences and respond no later than 13 MAY 05 or his seniority would be forfeited. The Plaintiff was then terminated on 13 MAY 05.

It was the Defendant's contention in McKnatt, that the disciplinary incidents in her employee file supported her troop captain's decision. Later, it was found that the referenced disciplinary incidents occurred once while off duty at her home and another for a false arrest. The plaintiff was suspended for a period of five days in May of the year 1997. It was the view of the defendants that though, the Plaintiff was promoted to in July of 1997; it was the 1997 incident, which was the nexus of their considerations in the

July 2000 promotion decision. The court found based upon the evidence presented that the troop Captain expressed an overt bias against women in the police force.

Moreover, that an apparent disparity between the Plaintiff's conduct and the discipline of others exists.

However, in <u>Knott-Ellis</u>, the plaintiff alleges that male corrections officers are not treated in the same manner as female officers, but fails to provide sufficient evidence to support her claims.

## V. WAS THE PLAINTIFF SUBJECTED TO AN UNFAIR

## EMPLOYMENT PRACTICE PURSUANT TO 42 U.S.C. § 2000e et seq.?

 Sub paragraph (c) of Labor organization practices, states that it shall be an unlawful employment practice for a labor organization, (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origins; (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way, which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment

16

opportunities or otherwise adversely affect his status as an employee or as

an applicant for employment, because of such individual's race, color,

religion, sex, or national origin; or (3) to cause or attempt to cause an

employer to discriminate against an individual in violation of this section.

Title 42 U.S.C. § 2000e-2, A (1), C (1) (2) (3).

The Plaintiff in the immediate case was a member in good standing of

UAW Local 1183, from 4 APR 89 to 13 MAY 05 when he was terminated.

In his complaint, Plaintiff Smiley contends that the UAW failed to

adequately represent him in a grievance procedure, created a breach of fair

representation. Additionally, the Plaintiff charged wrongful termination,

defamation and retaliation.

The UAW was charged with acting in a perfunctory manner in its

investigation into the Plaintiff's termination. (SEE: D.I._, Ex. M. and N.)

Further, the Plaintiff was never made a part of any investigation held

and was not requested to submit any additional information. In a letter

dated, the Defendant UAW did not state that the Plaintiff was reinstated but

a compromise to his employment had been reached. The Plaintiff has and

continued to suffer economic loss.

In Wright v. Pepsi Cola Company, Del. Supr. No. 563, 2002, Farnan,

J. (January 29, 2003)., Plaintiff brought action based upon violations of his rights under the equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C.§ 1981 in which he alleges (Count I); intentional failure to pay and proper provide proper back pay and benefits (Count II); fraud and misrepresentation (Count III); malicious conspiracy to cause wrongful termination (Count IV); defamation (Count V); wrongful and bad faith termination.

Defendants then moved pursuant to F.R.C.P. 12(b) (6), to dismiss all counts of the complaint for failure to state a claim upon which relief may be granted.

## VI. IS AN EQUAL PROTECTION CLAIM UNDER THE XIV AMENDMENT AVAILABLE AGAINST A PRIVATE ENTITY?

Yes, the Supreme Court "has pierced the …veil of private, individual conduct to find state action" in three categories of cases: (1) where state courts have enforced an agreement affecting private parties; (2) where the state "significantly" involved itself with the private party; and (3) where there was private performance of a government action. Wright, at 5, quoting Magill, 516 F.2d at 1331.

The plaintiff must establish a prima facie case that (1) he is a member of a

13

protect class; (2) that he was qualified to hold the position from which he was terminated and his job performance was satisfactory; (3) he suffered an adverse employment action; (4) the adverse action occurred in circumstances giving rise to an inference of discrimination on the basis of membership in the protected class. Id. at 6, referring to McDonnell Douglas, 411 U.S. 792.

### VII. IS THE PLAINTIFF A MEMBER OF A PROTECTED CLASS?

Yes, In the instant case, the Plaintiff David Smiley is an American male of African decent and Technician 1 Body Shop Fitter employed with the Defendant for sixteen years, until his termination.

Also, the Plaintiff Brent Wright is an African American male, who began his employment with the Defendant Pepsi Bottling Group in May 1995. As a member of Teamsters Local 830, he was a party to a collective bargaining agreement with the Pepsi Bottling Group.

### VIII. WAS HE QUALIFIED TO HOLD THE POSITION FROM WHICH HE WAS TERMINATED AND HIS JOB PERFORMANCE WAS SATISFACTORY?

Yes, the had aquired sixteen years seniority and became a Tech 1, similarly the Plaintiff other the referenced case was a driver and member of

14

a local union. <u>Wright</u>. At 1.

### IX.   HAD HE SUFFERED AN ADVERSE EMPLOYMENT ACTION?

Yes, the Plaintiff was terminated and as a direct result suffered fiscal

losses  from the Defendant refusal to reimburse him for lost man-hours

because of therapy, vacation pay, performance bonuses, contract signing

bonuses, and all health and educational benefits, 15% IRA deposits, for

which he if were still employed would be eligible.

Conversely, in <u>Wright,</u> the answer is moot because the Plaintiff's

adverse employment action for termination was remedied through the

arbitration process, and signed a settlement agreement releasing all claims

relating to the issue of back pay.

### X.   DID THE ADVERSE ACTION OCCUR IN CIRCUMSTANCES
### GIVING RISE TO AN INFERENCE OF DISCRIMINATION BECAUSE

#### OF HIS MEMBERSHIP IN THE PROTECTED CLASS?

Yes, an adverse action occurred in which PBG terminated the Plaintiff

on the false allegation the he had thrown a trash can at another employee.

Pursuant to the CBA, both parties submitted their dispute to arbitration;

which twice ordered PBG to reinstate Mr. Wright.

Similarly, in the present case the circumstances relating to Mr.

Smiley's termination give rise to an inference of discrimination because of his membership in a protected class, which reflects  the lack of response and manner in which his ordeal was handled.

However, in Wright, all but Count V, of the Plaintiff claims were dismissed in favor of the Defendant. Because the false statement was made outside of the context of a disciplinary investigation or grievance procedure and made to a third party having no connection to the proceedings, they are not preempted by the LMRA. Wright, at 12.  The court ruled in favor of the plaintiff finding that the statements made by the Defendants satisfied the defamatory statement element.

The court in Wright, held: "…Whether …termination was an  initial action that ultimately resulted in no legally cognizable adverse effect of plaintiff's or, having been reinstated with full back pay and benefits, no further remedy is available to plaintiff, the result is the same. Having prevailed in arbitration, plaintiff may not now seek to recover a second time for his … termination."

Additionally, the Plaintiff failed to exhaust his administrative remedies. By failing to evidence a filing with the EEOC, he could not provide a right to sue letter. The courts concluded that his claim couldn't survive a motion to

1£

dismiss.

In <u>Richard J. Schatzman v. Martin Newark Dealership</u>, Del. Supr. No. 731, 1999, Faran, J. (August 14, 2001). A Plaintiff filed an action alleging (1) unlawful retaliation in violation of Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq</u>. and 42 U.S.C. § § 1981 and 1981a; (2) breach of the implied covenant of good faith and fair dealing pursuant to Delaware state law. Defendant in the above action made motion for summary judgment.

The Plaintiff Richard J. Schatzman, who is a white male was hired by the Defendant Martin Newark Dealership, Inc. as a manager in the sales department 1 MAY 98.

He claimed that in August 1998, he overheard a co-worker and fellow manager Larry Thompson, after returning from a motorcycle trip that he had taken through Trenton, NJ make a reference to "monkeys" in a manner of the Plaintiff considered to be racially derogatory. The Plaintiff contacted the DDOL, which advised him to report the incident to his supervisor. He followed the advice and reported the matter to Ron Balis , who in turn issued Larry Thompson a written warning. Immediately afterwards Larry Thompson confronted the Plaintiff; addressed him in a derogatory manner

and threatened to get back at him.

During September 1998, Larry Thompson submitted a written statement to his supervisor accusing the Plaintiff of calling a female co-worker Carol Heyse a derogatory name concerning the female anatomy. Written statements were also submitted by Ms. Heyse and another manager Adam Staffin, corroborating Thompson's account of the facts. After notifying his supervisor of the previous threat attributed to Thompson he received his supervisors acknowledgment that he would take care of the problem.

An investigation by the General Sales manager ensued and the Plaintiff was issued a written warning, on the back of which he allowed for the Plaintiff to write down his version of the event. The Plaintiff was terminated the next day by the General Manager, based upon the three written statements, a conversation with Poursaid, and the fact that the Plaintiff had mistreated Ms. Heyse in the past. A charge of discrimination was filed by the Plaintiff with the EEOC and DDOL.

## XI. IS THERE AN EXCEPTION TO THE AT-WILL EMPLOYMENT DOCTRINE?

Yes, The courts have held that that a plaintiff can maintain a common

18

law claim for breach of the covenant due to discriminatory conduct.

Shatzman, applying Shuster v. Derocili, 2001 WL 682105, at 2-6 (Del. June 15, 2001).

## XII. ARE PUNITIVE DAMAGES RECOVERABLE ON A BREACH OF COVENANT CLAIM?

Yes, Thurston v. Liberty Mut. Ins. Co., 16 F. Supp. 2d 441, 448 (D. Del. 1998), Delaware courts have held that punitive damages may be recovered for a breach of contract if the complained conduct " … is similar in character to an intentional tort."

## XIII. DO CLAIMS OF RETALIATION IN VIOLATION OF TITLE VII OR SECTIONS 1981 AND 1981a APPLY?

Yes, a plaintiff may proceed under (1) a mixed motive theory or (2) a pretext theory in attempting to establish retaliation in violation of Title VII or 1981(5).

## XIV. IS THE PLAINTIFF ENGAGED IN A PROTECTED ACTIVITY?

Yes, the Plaintiff David A. Smiley satisfies the first requirement of 42 U.S.C. as he was engaged in a protected activity when he was placed on a out of work status by his treating physician because of the continued aggravation of a disability sustained while in the normal course of fulfilling

his job requirement.

Yes, the Plaintiff in <u>Shatzman</u>, was engaged ina protected activity

because the court found that, (1) the Plaintiff's job did not require him to

encounter discriminatory or abusive comments, (2) the found that referring

to African Americans as monkeys is reasonably deemed derogatory, and (3)

because he was advised by the DDOL to report Thompson's comments to

his supervisor; he reasonably believed that the derogatory comments

attributed to Thompson were actionable under Title VII or Section 1981.


**XV.** <u>DID DEFENDANT TAKE ADVERSE ACTION AGAINST THE</u>

<u>PLAINTIFF?</u>

Yes, Plaintiff David Smiley satisfies the second requirement because to

satisfy an accommodation, the PQX Department assigned the Plaintiff to the

left front fender install job, the Plaintiff in the performance of the job

operation was issued a tool known as a Yankee to install fender bolts;

further aggravating his right elbow because of the plunging motion

associated in the operation of the tools use; also because the job was

ergonomically incorrect.

Upon receiving notice that the Plaintiff was to at the request of the

Defendant, submit substantiation of his covered treatment related absences the Plaintiff was terminated without the benefit of a 24 hour extension to correct any discrepancies associated with his submitted material, by Dawn Ford of the H.R. department of the Defendant.

Yes, similarly in  Shatzman, the Plaintiff was terminated from his place of employment based upon factious information relayed about the Plaintiff from non-disinterested parties.

## XVI.  DOES A CASUAL LINK EXIST BETWEEN THE ADVERSE EMPLOYMENT ACTION TAKEN BY THE DEFENDANT AND THE PROTECTED ACTIVITY ENGAGED BY THE PLAINTIFF?

Yes, in the instant case at bar David Smiley was on an out of work status when he received notice to report to the plant no later than 13 MAY 05, to substantiate his medical leave. After supplying the necessary information, the Plaintiff was terminated that same day.

The Third Circuit has stated that "temporal proximity" between the protected activity and termination is sufficient to establish a casual link. Schatzman, at 14. Going further the court looked to Farrell v. Planters Lifesavers, 206 F. 3d 271, 279 (3d Cir. 2000); for additional clarification stating that the analysis is fact sensitive, with the ultimate determination

being how "proximate" the events were and the context in which the issue arises.

## CONCLUSION:

The Plaintiff David A. Smiley,  is a member of a protected class, qualified for the position he held, and  suffered an adverse employment action which gives rise to an inference of discrimination.

He was needlessly retaliated against by the defendant for engaging in a protected activity, thus a casual link exists between the adverse employment actions taken by the Defendant.

As a direct result of the tortuous actions and unfair employment practices of the Defendant in addition to the temporal proximity of events, the Plaintiff has suffered emotionally and financially; the Plaintiff asks for lost income in the form of bonuses, vacation, contractual signing bonuses, health care insurance, educational expenses, future wages for the period until his projected retirement date. both compensatory and punitive damages.

Wherefore, the Plaintiff prays that the court will find in his favor.

Respectfully Submitted,

By: <u>David A. Smiley</u>

Pro se

814 B Village Circle
Newark, DE 19713
(302) 444-4872
Dasmyle2@aol.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DAVID A. SMILEY,                    )
                                    )
          Plaintiff,                )
                                    )          C.A. No. 1:07-005-SLR
     V.                             )
                                    )
DIAMLER CHRYSLER,                   )          JURY TRIAL DEMANDED
                                    )
          Defendant,                )
                                    )

## CERTIFICATE OF SERVICE

I hereby certify this 9ᵗʰ day of April 2008, that a true and correct copy of the foregoing **PLAINTIFF  DAVID A. SMILEY'S OPENING BRIEF** , was served by U.S. First Class Mail, postage prepaid, to the following addresses:

*(handwritten: "15ᵗʰ    MAY 2008" above "9ᵗʰ day of April")*

        Jennifer Wasson (No. 4933)
        Hercules Plaza - Sixth Floor
        1313 North Market Street
        Wilmington, DE 19801
        (302) 984-6165 (Telephone)
        (302) 658-1192 (Facsimile)
        Jwasson@potteranderson.com (Email)


        Joseph J. Rhodes
        1225 King Street Ste. 1200
        Wilmington, DE 19899-0874
        (302) 427-9500 Telephone
        (302) 427-9509 Fax

David A Smiley, *pro se*
814 Village Circle B
Newark, DE 19713


(302) 444-4872 (Residence)
(302) 345-3395 (Cellular)
Dasmyle2@aol.com (Email)

*Ex. O*

Substantiation
### ~~REINSTATEMENT~~ DENIAL

Date _May 13, 2005_          Time _10:12 a.m._

Name _David Smiley_          DCid# _241681_

You are being denied ~~reinstatement~~ *substantiation* from sick leave due to insufficient medical documentation. You have been told what information your documentation is missing (see below) and given a copy of the reinstatement requirements. Accordingly, you are to report to the plant personnel office by 3:00pm on _5/13/05_ with a **NEW** doctor's note that meets **ALL** of the reinstatement requirements.

You were released to return to work by your treating physician on _n/A_
You will be reinstated effective _n/A_, and will accumulate an excused tardy/absence for _n/A_. Extended coverage from your treating physician for _n/A_ will not be accepted.

However, if you do not provide the required ~~reinstatement~~ *substantiated* documentation as requested your seniority will be terminated.

Employee Signature _____    Date _____

HR Representative _Dawn Ford_          Date _5/13/05_

Comments: Your submitted documentation is missing the following:

____ Letterhead w/physician's name & phone#          ____ Date statement was written

_X_ Diagnosis or diagnostic code          _X_ Statement of total disability

____ Physician's signature          _X_ Return to work date *or estimated return to work date*

____ Dates of treatment to include Start and End Dates of Medical Coverage

_X_ *original notes*

Personnel Office
Hours of Operation
(Inactive Employees)

9:00am-11:30am
and
1:30pm-3:00pm

**CHRYSLER 100**

*Ex. P*



**DaimlerChrysler Corporation**
**Newark Assembly Plant**
**Personnel Office**

# Memo

**To:**   Labor Relations

**From:**  Dawn Ford

**CC:**   Dan Mykolenko

        Todd Frohner

**Date:**  May 13, 2005

**Re:**   David Smiley

On May, 6, 2005, Mr. David Smiley was issued a substantiation letter to report to the personnel office for missing his medical appointment on May 4, 2005.

He reported to the personnel office on Friday, May 13, 2005 at 10:12 a.m. with all of the letters within the envelope. He presented copies of his doctors' notes to me and I asked him where the originals are. He responded that he didn't feel like caring all of the notes, so he copied them, but he has them at home and he can bring them back to the office. I had informed him that the notes did not meet the criteria for proper substantiation and that he needed to bring back notes that met the requirement. In addition, I also asked him why he missed his medical appointment. Mr. Smiley said that he was unaware of the medical appointment. Until he had received the note, he did not know that he had an appointment.

I asked him if he had contacted medical to reschedule an appointment, and he told me that that was why he came down here. I filled out the Substantiation Denial form and explained to him what he was missing and that he had until 3:00 pm today to present proper documentation or his seniority will be terminated. If he refused to sign, just write RTS and date. He said "its okay dear, you can do that, and pushed the paper back under the glass and claimed that he will be back.

He came back with the same copied 4 notes around 11:40 a.m. and tried to present it to Angenella Fleming. Again she had explained to Mr. Smiley that she could not resolve this issue but she will give this form to me when I get back.

In addition, he was not given 24 hours due to fact that he already was given 5 days to report and presented the requirements to the personnel office. He was well aware of the procedures and he was taken advantage of them.