THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID A. SMILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 1:07-005-SLR |
| v. | ) |
| | ) |
| DAIMLER CHRYSLER, | ) JURY TRIAL DEMANDED |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT CHRYSLER LLC'S REPLY BRIEF**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

                              Jennifer Gimler Brady (#2874)
                              Jennifer Wasson (#4933)
                              POTTER ANDERSON & CORROON LLP
                              Hercules Plaza, 6th Floor
                              1313 N. Market Street
                              P.O. Box 951
                              Wilmington, DE  19899-0951
                              (302) 984-6000 – Telephone
                              (302) 658-1192 - Facsimile
                              jbrady@potteranderson.com
                              jwasson@potteranderson.com

                              *Attorneys for Defendant Chrysler LLC*

Dated:  June 9, 2008
867619 / 31959

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................2

I.     PLAINTIFF'S ADA CLAIMS FAIL BECAUSE HE IS NOT DISABLED .......................2

II.    PLAINTIFF HAS NO CLAIM FOR FAILURE TO ACCOMMODATE ..........................6

III.   PLAINTIFF CANNOT STATE A CLAIM FOR WRONGFUL TERMINATION ...........9

CONCLUSION ..............................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

Pages

*Crumpton v. St. Vincent's Hosp.*,
963 F. Supp. 1104 (N.D. Ala. 1997)..................................................................5

*Doner v. City of Rockford*,
77 Fed. Appx. 898 (7th Cir. 2003)......................................................................7

*Emerick v. Norfolk S. Rwy. Co.*,
2006 U.S. Dist. LEXIS 89605 (W.D. Pa. Dec. 12, 2006)..................................2

*Horth v. General Dynamics Land Sys.*,
960 F. Supp. 873 (M.D. Pa. 1997).....................................................................5

*Jones v. UPS*,
214 F.3d 402 (3d Cir. 2000)...............................................................................8

*Kelly v. Drexel Univ.*,
94 F.3d 102 (3d Cir. 1996).................................................................................3

*Kim v. Potter*,
2008 U.S. Dist. LEXIS 13355 (D. Haw. Feb. 22, 2008)....................................9

*Leitch v. MVM, Inc.*,
538 F. Supp. 2d 891 (E.D. Pa. 2007).................................................................3

*Lockard v. General Motors Corp.*,
52 Fed. Appx. 782 (6th Cir. 2002).....................................................................9

*Schmidt v. Safeway, Inc.*,
864 F. Supp. 991 (D. Or. 1994).........................................................................8

*Sutton v. United Air Lines, Inc.*,
527 U.S. 471 (1999)...........................................................................................3

*Tice v. Centre Area Trans. Auth.*,
247 F.3d 506 (3d Cir. 2001)...............................................................................2

*Toyota Motor Mfg. Ky., Inc. v. Williams*,
534 U.S. 184 (2002)...........................................................................................5

**STATUTES**

Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* ...................................*passim*

## INTRODUCTION

Plaintiff David A. Smiley's ("Plaintiff") Brief Answer to Defendant's Opening Brief raises no genuine issues of material fact.[1] Plaintiff cannot demonstrate that he is disabled under the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and this deficiency is fatal to his claims at the outset. Even if Plaintiff could overcome this significant hurdle, however, he has no evidence that Chrysler failed to provide him with a reasonable accommodation or failed to participate in the interactive process, and he cannot show that his termination was motivated by discriminatory animus based on his alleged disability. Therefore, Chrysler is entitled to judgment as a matter of law on all of Plaintiff's claims against it.

---

[1] Plaintiff's answering brief in opposition to Defendant's Motion for Summary Judgment, titled "Brief Answer to Defendant's Opening Brief," D.I. 53, is referred to herein as ("Pl. Ans. Br. at ___").

## ARGUMENT

I. **PLAINTIFF'S ADA CLAIMS FAIL BECAUSE HE IS NOT DISABLED.**

In his opposition brief, Plaintiff asserts that Chrysler's motion for summary judgment should be denied because he has a "record" of a disability (Pl. Ans. Br. at 8), he "is regarded as totally disabled" by his treating physician (Pl. Ans. Br. at 8), and he is substantially limited in working and in other unspecified major life activities (Pl. Ans. Br. at 9-10). Plaintiff's arguments, however, do not show that he is disabled within the meaning of the ADA under any prong of the analysis.

To state a claim under the "record of" prong of the ADA, a plaintiff must demonstrate that the recorded impairment at issue constitutes a disability within the meaning of the statute. *Tice v. Centre Area Trans. Auth.*, 247 F.3d 506, 513 (3d Cir. 2001). As discussed briefly below and more fully in Chrysler's Opening Brief in Support of its Motion for Summary Judgment, D.I. 46, ("Chrysler's Opening Brief"), Plaintiff has set forth no facts demonstrating that his elbow injury rendered him substantially limited in any major life activities at any point in time. Plaintiff attempts to make the required showing in his brief by citing his history of medical treatment (Pl. Ans. Br. at 8), but medical records are insufficient to establish a "record of" a disability under the ADA. Instead, Plaintiff must produce evidence that "the extent of the limitation in terms of [his] own experience . . . is substantial." *Emerick v. Norfolk S. Rwy. Co.*, 2006 U.S. Dist. LEXIS 89605, at *19 (W.D. Pa. Dec. 12, 2006) (rejecting ADA claims based only on plaintiff's medical history, disability ratings, and description of treatments, as "this evidence does not make the demonstration that the ADA requires") (internal citations omitted, emphasis added). Because Plaintiff cannot demonstrate that his elbow injury constitutes a disability, he cannot bring a claim for discrimination under the "record of" prong of the analysis.

Plaintiff also cannot show that he was "regarded as" disabled. Plaintiff contends that he has satisfied this prong of the ADA analysis because his physician regards him as totally disabled. (Pl. Ans. Br. at 8.) This inquiry, however, is focused on Chrysler's beliefs as to Plaintiff's impairment, not those of Plaintiff's physician. *See Leitch v. MVM, Inc.*, 538 F. Supp. 2d 891, 902 (E.D. Pa. 2007) (rejecting plaintiffs' claims under "regarded as" prong of ADA analysis in part because deposition testimony of doctor proffered by plaintiffs did not demonstrate whether employer regarded plaintiffs as disabled). To be "regarded as" disabled, Plaintiff must demonstrate either that: (1) despite Plaintiff having no impairment at all, Chrysler erroneously believed that he had an impairment that substantially limits major life activities; or (2) Plaintiff has a non-limiting impairment that Chrysler mistakenly believed limits major life activities. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). Simply demonstrating that Chrysler was aware of Plaintiff's impairment is not sufficient to make this showing. *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996).

Plaintiff has no claim under the "regarded as" prong of the analysis because he can adduce no evidence that Chrysler believed he was disabled. On the contrary, Plaintiff worked in his regular job without issue for a significant time after sustaining his elbow injury. (Pl. Dep. at A42, 46, 51-52.)[2] In addition, after receiving the results of Plaintiff's independent medical exam, Chrysler reinstated him from leave to a position in the Body Shop because it thought he could work. (Heitzmann Aff., A250 at ¶4; Pl. Dep. at A66.) Plaintiff did return to work in this position, and during that time, he never informed Chrysler management that he was having

---

[2] Pertinent documentary evidence and Plaintiff's deposition testimony are included in Chrysler's Appendix to its Opening Brief in Support of its Motion for Summary Judgment (D.I. 47 (under seal) and D.I. 50 (public version)), referred to herein as ("A__"), and in Chrysler's Appendix to its Response Brief In Opposition To Plaintiff's Opening Brief, D.I. 58, referred to herein as ("B__").

3

difficulty or that he could not perform his duties -- he simply did his job. (Pl. Dep. at A73, 76.) These facts are inconsistent with the notion that Chrysler considered Plaintiff to be substantially limited in any major life activities, including working. Similarly, there is no evidence that Dawn Ford, the Human Resources Generalist involved in Plaintiff's termination, regarded him as disabled. Chrysler's substantiation requirements for absences apply to any employee who misses work five days or more for illness, so Ford would have no reason to assume that Plaintiff was disabled merely because he reported to the Plant to substantiate his absence. (Ford Aff., A244 at ¶5; Chrysler's Substantiation Document, A257.) Ford had no knowledge of the nature of Plaintiff's absence when she met him on May 13, 2005, and neither Plaintiff's medical documentation nor his conversation with her revealed such information. (Ford Aff., A247-248 at ¶15, Pl. Dep. at A97-101; 171-172, Copies of Bandera Notes, A274.) Plaintiff thus has no claim under the "regarded as" prong of the ADA.

Finally, Plaintiff fails to raise a genuine issue of material fact as to whether his elbow injury qualifies as a "disability" within the meaning of the statute. In his opposition brief, Plaintiff argues that his elbow condition renders him substantially limited in working because he is "restricted in his ability to perform a 'class' of jobs." (Pl. Ans. Br. at 9.) Plaintiff apparently defines this class of jobs as work on an assembly line or, more broadly, in "any manufacturing capacity." (Pl. Ans. Br. at 9.) Plaintiff's deposition testimony, however, significantly undermines this assertion. When asked about his efforts to obtain employment, Plaintiff testified that he has considered returning to a manufacturing job and would work on an assembly line as long as the available position did not involve repetitive motion of his arm. (Pl. Dep. at A33-34.) He also conceded that he has obtained a paralegal degree and has worked as a supervisor for a tax preparation service, among other jobs. (Pl. Ans. Br. at 9.) Given Plaintiff's post-termination

4

employment in a variety of jobs and his educational background (both of which are detailed in Chrysler's Opening Brief at 16-18), Plaintiff cannot show that he is substantially limited in working.

Plaintiff's bare assertion that his medical records reflect his limitations as to any other major life activities also is unavailing. (Pl. Ans. Br. at 9-10.) As an initial matter, Plaintiff has failed to identify the records on which he relies, and Chrysler should not be forced to speculate as to Plaintiff's supposed proof. Further, even if Plaintiff had pointed to specific medical records evidencing his diagnosis and treatment, this evidence is not sufficient to demonstrate a substantial limitation. As noted above, Plaintiff must prove his alleged disability by offering evidence of the impact or extent of the impairment <u>on his own life experience</u>. *Toyota Motor Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002) (internal citations omitted, emphasis added). Plaintiff has wholly failed to make this showing. During his deposition, Plaintiff testified that he is "fully capable of taking care of" himself (Pl. Dep. at A41), and that his elbow injury has not impacted his ability to hug and pick up his children, cook and clean, drive, walk, stand, bathe, and dress himself. (Pl. Dep. at A40-41.) Plaintiff's opposition brief also provides no particularized facts demonstrating how, if at all, his elbow injury substantially limits his daily living.[3] Therefore, because Plaintiff cannot show that he is disabled under any prong of the

---

[3] Furthermore, to the extent Plaintiff attempts to rely on his medical restrictions or his worker's compensation status to prove he is disabled (Pl. Ans. Br. at 8, 9), these facts are not sufficient to meet his burden under the ADA. *See Crumpton v. St. Vincent's Hosp.*, 963 F. Supp. 1104, 1114 (N.D. Ala. 1997) (restrictions on heavy lifting or repetitive movements not sufficient to establish disability under ADA); *Horth v. General Dynamics Land Sys.*, 960 F. Supp. 873, 880 (M.D. Pa. 1997) ("because the criteria in determining a workers' compensation award are different from those applied under the ADA, a workers' compensation award is not dispositive in an ADA case".) For further discussion of these issues, Chrysler respectfully refers the Court to its Opening Brief at 13-15.

ADA analysis, his disability discrimination claims must fail. Summary judgment should be granted in favor of Chrysler.

## II. PLAINTIFF HAS NO CLAIM FOR FAILURE TO ACCOMMODATE.

Even if Plaintiff could demonstrate that he is a qualified individual with a disability under the ADA, he cannot state a viable claim against Chrysler for failure to accommodate. In his opposition brief, Plaintiff argues that Chrysler "knowingly placed an undue hardship upon [him] when he performed his assigned PQX job." (Pl. Ans. Br. at 11.) Plaintiff, however, does not identify what the hardship was or specify how Chrysler imposed such a hardship. He also fails to cite any record facts supporting this conclusory assertion. Plaintiff's argument on this point is untenable because there is no evidence that Chrysler "knowingly" placed Plaintiff in his accommodated position to work a hardship on him. On the contrary, the record shows that Chrysler obtained Plaintiff's current medical restrictions and worked with his union, the Plant Safety Department, and an OSHA-certified nurse to place him in a job that comported with those restrictions. (Heitzmann Aff., A250, ¶ 4, PQX Placement Document, A256; Pl. Dep. at A67, 72-73.) Plaintiff never complained about his accommodated placement prior to beginning the job (Pl. Dep. at A73), nor did he tell Chrysler's management that he was having difficulty performing his duties (Pl. Dep. at A76). As such, Plaintiff has no proof that Chrysler "knowingly" sought to harm or discriminate against him in any way through his PQX placement.[4]

At the conclusion of his opposition brief, Plaintiff also alleges that Chrysler failed to participate in the interactive process. (Pl. Ans. Br. at 15-16.) According to Plaintiff, this failure

---

[4] To the extent Plaintiff argues that Chrysler imposed an undue hardship on him by placing him in an accommodated position that aggravated his elbow condition, this issue has been discussed extensively in Chrysler's Opening Brief. Chrysler respectfully refers the Court to its Opening Brief for further discussion of this issue. *See* Chrysler's Opening Brief at 20-22.

is based on Chrysler's decision to place him in an accommodated position that aggravated his elbow injury and Chrysler's neglecting to check his limitations against the job description for that position. (Pl. Ans. Br. at 15-16.) Plaintiff is mistaken. First, as a factual matter, Plaintiff conceded at his deposition that the PQX Placement Committee considered an accurate list of his medical restrictions when determining his accommodated placement. (Pl. Dep. at A67, 72-73.) Indeed, not only did the PQX Placement Committee check his limitations against the job description, they also confirmed his proposed placement with the Plant Safety Department and the OSHA-certified nurse. (Pl. Dep. at A65-67; PQX Placement Document, A256.) Plaintiff's contentions on this point also are undermined by his admission that the Yankee tool he used in his accommodated position involved an "up-and-down," plunging motion, not the repetitive twisting movements his restrictions prohibited. (Pl. Dep. at A71; Pl. Ans. Br. at 4.) Thus, Plaintiff's allegations are inconsistent with the record evidence in this case.

Second, and more importantly, Plaintiff cannot state a claim against Chrysler for failure to participate in the interactive process because he cannot show that Chrysler refused to provide an accommodation that he requested. "Unless the failure to interact resulted in the loss of a reasonable accommodation that otherwise would have been reached, it is not actionable." *Doner v. City of Rockford*, 77 Fed. Appx. 898, 902 (7th Cir. 2003) (internal citations omitted). In this case, Chrysler accommodated Plaintiff from the inception of his elbow injury by allowing him to take several medical leaves of absence and by permitting him to use a lighter hammer to perform his job duties. (Pl. Dep. at A51-52, 54-56.) When Plaintiff's medical restrictions rendered him unable to perform his regular job, Chrysler placed him in an accommodated position consistent with those restrictions, as discussed above. Plaintiff never objected to his accommodated

7

position, and he never asked to be reassigned to another position or to be given an accommodation that would make his new job easier to do. (Pl. Dep. at A76-78.)

Contrary to Plaintiff's suggestion, the fact that he performed his accommodated job with his left arm as opposed to his injured right arm does not constitute a request for "accommodation in abstention" or an implicit request for another job. (Pl. Ans. Br. at 15.) Plaintiff never informed Chrysler that he was unable to perform the job functions with his right arm, and he never complained about doing the job with his left arm. (Pl. Dep. at A73-76.) An employee cannot "expect the employer to read his mind and know he secretly wanted a particular accommodation." *Schmidt v. Safeway, Inc.*, 864 F. Supp. 991, 997 (D. Or. 1994). While Plaintiff claims that he could have been reasonably accommodated but for Chrysler's lack of good faith (Pl. Ans. Br. at 15), Plaintiff has never explained how Chrysler could have better accommodated him or identified an available position that would have been more reasonable than his PQX placement. In short, Plaintiff's failure to request an accommodation is fatal to his interactive process claim. *See Jones v. UPS*, 214 F.3d 402, 408 (3d Cir. 2000) (affirming summary judgment for employer on ADA interactive process claim; "[b]ecause there is no evidence from which a request for accommodation could be inferred, UPS was under no legal obligation to engage in the interactive process").

Moreover, Plaintiff cannot show that Chrysler failed to participate in the interactive process after his assignment to the accommodated position. Shortly after Plaintiff was reinstated, his physician recommended that he stop working entirely, so Chrysler accommodated Plaintiff in the only way that it could: by placing him back on medical leave without objection. Plaintiff testified that he did not ask to be placed in another job after performing the accommodated position because "[my doctor] had taken me out . . . [m]y doctor made a decision

8

and that was about the end of it" (Pl. Dep. at A75), and that "I probably should have had another [job], probably, but, then again, like I said, after I went to my doctor . . . [he] pulled me out. That was it." (Pl. Dep. at A77.) *See Kim v. Potter*, 2008 U.S. Dist. LEXIS 13355, at *44-45 (D. Haw. Feb. 22, 2008) (granting summary judgment for employer on interactive process claim because no reasonable accommodation was possible given plaintiff's qualifications and restrictions and the employer's available positions). Simply put, the record facts show that Chrysler is not responsible for a breakdown in the interactive process. Plaintiff cannot adduce any evidence showing bad faith or an unwillingness to cooperate on Chrysler's part, and his failure to accommodate claim must fail. *See Lockard v. General Motors Corp.*, 52 Fed. Appx. 782, 788 (6th Cir. 2002) (affirming grant of summary judgment for employer on interactive process claim; plaintiff was placed in accommodated position pursuant to decision by joint union and management placement committee, plaintiff was then placed on leave when she informed management she could not perform the job, and plaintiff failed to present evidence showing that she requested another accommodation).[5]

### III. PLAINTIFF CANNOT STATE A CLAIM FOR WRONGFUL TERMINATION.

Neither can Plaintiff raise a genuine issue of material fact as to his termination. Plaintiff attempts to do so on three grounds: (1) that original documents are not required under Chrysler's substantiation policy, and he previously submitted photocopied documents to Chrysler; (2) that Dawn Ford's alteration of a reinstatement document was discriminatory and/or justified his failure to submit original documents; and (3) that he could not return to Chrysler on May 13,

---

[5] Plaintiff's passing reference to the union's failure to train him for his accommodated position or to solicit his input prior to the PQX Placement Committee meeting are addressed in Chrysler's Opening Brief. Chrysler respectfully refers the Court to its Opening Brief for further discussion of these issues. (*See* Chrysler Opening Br. at 22, n15.)

9

2005 due to his child's early dismissal from school. None of these arguments are sufficient to sustain his discriminatory discharge claim.

Plaintiff's claim that Chrysler accepts photocopies is belied by the terms of Chrysler's substantiation policy, which prohibits common types of "non-original" documents such as faxes and rubber stamps (Chrysler Substantiation Requirements, A257), and by Ford and Heitzmann's testimony as members of Chrysler's management team in the Personnel Department (Ford Aff., A245-246 at ¶¶6, 9-10; Heitzmann Aff., A250 at ¶5). Plaintiff's claim also is undermined by his own medical file, which contains four original doctor's notes from the years 2000-2004. (Second Heitzmann Aff., B2 at ¶3.) Also casting doubt on Plaintiff's assertion is the fact that he could not produce for Chrysler's inspection any original doctor's notes from the relevant time period, though he repeatedly emphasized throughout his deposition the importance he places on keeping his original documents. (Letter of May 1, 2008, B3; Pl. Dep. at A99-100, 121-122.) Apart from his own conclusory assertions, Plaintiff has no proof to support the idea that Chrysler accepts photocopied medical documentation or that he actually submitted photocopies to Chrysler without objection in the past. More importantly, however, even if Chrysler did not require original documentation prior to May 2005, this fact would not justify Plaintiff's refusal to follow the directives of Chrysler's Human Resources Generalist when she advised him that his photocopied notes were insufficient. As discussed more fully in Chrysler's Opening Brief, Plaintiff is not entitled to substitute his own views on the proper administration of the substantiation policy for those of Chrysler. (*See* Chrysler's Opening Br. at 25-27.)

Also, to the extent Plaintiff contends that Chrysler should have attempted to verify the authenticity of his doctor's notes before terminating his employment (Pl. Ans. Br. at 13), this argument is meritless. Chrysler's substantiation policy imposes no obligation on the Company to

10

verify medical documentation at an employee's behest or for his benefit – the policy simply reserves management's right to verify documentation in its discretion. (Chrysler Substantiation Document, A257.) Indeed, the requirement that employees submit original documents is specifically designed to alleviate the need for such additional verification. Moreover, in Plaintiff's case, there was no need for Chrysler to take extra measures to authenticate his submission. Ford informed Plaintiff that his doctor's notes were insufficient because they were photocopies, and she gave him another opportunity to submit original notes. When Plaintiff blatantly refused to follow Ford's instructions and instead submitted another photocopy without explanation, Chrysler had no reason to further confirm the accuracy of his submissions – Plaintiff already had been instructed to verify the documents by producing originals, and he did not comply. More fundamentally, Plaintiff's argument about verification does not support his discrimination claim because Plaintiff cannot show that Chrysler's failure to verify his doctor's notes was motivated by discriminatory animus or that Chrysler verified inadequate submissions of non-disabled employees before discharging them. In sum, Plaintiff's unsupported assertions about original documents do not warrant denial of Chrysler's summary judgment motion on his termination claim.

Plaintiff's second argument pertains to Ford's alleged "alteration" of a reinstatement form during their conversation on May 13, 2005. Plaintiff contends that Ford discriminated against him because she "intentionally issued the incorrect form to Plaintiff." (Pl. Ans. Br. at 14.) Significantly, Plaintiff does not explain how this action relates to his alleged disability. Instead, Plaintiff cites Ford's affidavit testimony, where she explains that she wrote the substantiation requirements on a reinstatement form "because I did not have any other forms handy." (Pl. Ans. Br. at 14.) While Plaintiff apparently believes that this explanation

demonstrates bad faith on Ford's part, he points to no facts supporting that view or evidencing Ford's alleged discriminatory motive. In fact, Plaintiff cannot even show that Ford had knowledge of his purported disability. (Ford Aff., A247-248 at ¶15, Pl. Dep. at A97-98, 100-101, 171-172.)

Similarly unpersuasive is the fact that Ford failed to mention the reinstatement form in her memo documenting Plaintiff's termination. (Pl. Ans. Br. at 14; Ford Memo, A281.) Ford had no reason to mention the form in her memo because it was not relevant to the issue at hand (*i.e.*, Plaintiff's failure to comply with the substantiation policy after two opportunities to do so). Furthermore, there is no evidence that Chrysler management believed Ford's alleged alteration of the reinstatement form constituted misconduct. Ford never attempted to hide the form or disclaim responsibility for it; rather, the form was placed in Plaintiff's permanent record in his personnel file. Plaintiff can adduce no facts showing that Ford's modification of the reinstatement form was improper or somehow discriminatory, and he fails to raise a genuine issue of material fact on this ground.

Third, Plaintiff claims that Ford's memo did not mention his inability to return to the Plant on May 13, 2005 due to his child's early dismissal. (Pl. Ans. Br. at 14.) Plaintiff's reference to this issue, however, merely highlights the inconsistency in his deposition testimony with regard to his termination and further discredits his claim. Plaintiff testified that he reported to the Plant a second time on May 13, 2005 and again submitted photocopies of his doctor's notes, this time to Angenella Fleming, an employee in Chrysler's Personnel Department. (Pl. Dep. at A112-114.) Plaintiff claimed that when he gave his photocopied notes to Fleming, he believed he had satisfied Chrysler's substantiation requirements and was sure that he had submitted the correct documentation. (Pl. Dep. at A114, 119.) During his deposition, Plaintiff

12

also placed a significant amount of emphasis on the fact that he told Fleming about having to pick up his daughter at school that afternoon, and that he submitted a note from his daughter's school confirming that May 13, 2005 was an early dismissal day.[6] (Pl. Dep. at A113-114, 118.) Plaintiff's child's early dismissal, however, is irrelevant to Chrysler's decision to terminate him. Plaintiff never asked Fleming to convey this information to Ford and never told Ford or Fleming that he needed additional time to fulfill the substantiation requirements – he simply resubmitted photocopied notes without further explanation. (Pl. Dep. at A112-113, 117-118.)

This testimony, however, sheds light on <u>Plaintiff</u>'s beliefs and motivations. If Plaintiff truly thought his photocopied documents complied with Chrysler's substantiation policy, his child's early dismissal that afternoon would have no bearing on this issue, since he would have already fulfilled the substantiation requirements that morning. Plaintiff's emphasis on his afternoon schedule suggests that he knew his second submission was not compliant but did not bother to rectify the problems because he had other things to do. Despite being warned in Chrysler's May 6, 2005 letter that failure to properly substantiate his absence by May 13, 2005 would result in termination (A278), Plaintiff was willing to gamble on his submissions being good enough, reasoning that, "if there's any problem, they will contact me, whatever, whatever." (Pl. Dep. at A113.) Plaintiff's testimony shows only that he took a calculated risk in refusing to follow Chrysler's instructions, not that Ford or anyone else at Chrysler discriminated against him. Plaintiff's arguments as to the early dismissal utterly fail to support his discriminatory discharge claim and do not raise a genuine issue of material fact as to Chrysler's reasons for his termination.

---

[6] Plaintiff testified that he "submitted all that stuff [including the early dismissal note] at the same time, because my daughter got out of school early that afternoon." (Pl. Dep. at 112.) The date of the early dismissal note Plaintiff references as an exhibit, however, is dated February 9, 2006, nearly a year after his May 2005 termination. (Pl. Ans. Br., Ex. R.)

13

## CONCLUSION

For the foregoing reasons and the reasons set forth in Chrysler's Opening Brief in Support of its Motion for Summary Judgment, Chrysler is entitled to summary judgment on all of Plaintiff's claims against it. Therefore, Chrysler respectfully requests that its motion be granted and Plaintiff's ADA claims be dismissed with prejudice in their entirety.

POTTER ANDERSON & CORROON LLP

By: _____
Jennifer Gimler Brady (#2874)
Jennifer Wasson (#4933)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000 – Telephone
(302) 658-1192 - Facsimile
jbrady@potteranderson.com
jwasson@potteranderson.com

*Attorneys for Defendant Chrysler LLC*

Dated: June 2, 2008
867619 / 31959

## CERTIFICATE OF SERVICE

I hereby certify this 9th day of June, 2008, that a true and correct copy of the foregoing **DEFENDANT CHRYSLER LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was served in the manner indicated to the following:

**FIRST CLASS, U.S. MAIL, POSTAGE PREPAID**
David A. Smiley, *pro se*
814 Village Circle, Apt. B
Newark, DE 19713

I further certify this 9th day of June, 2008, that the above-mentioned document was electronically filed with U.S. District Court District of Delaware via CM/ECF (Official Court Electronic Document Filing System) which will send notification of such filing that the document is available for viewing and downloading via CM/ECF to the following counsel of record:

Joseph J. Rhoades
Allen Dale Bowers
Law Office of Joseph Rhoades, Esq.
1225 King Street, Suite 1200
P.O. Box 874
Wilmington, DE 19899-0874

/s/ Jennifer Wasson
Jennifer Wasson (No. 4933)
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6165 (Telephone)
(302) 658-1192 (Facsimile)
jwasson@potteranderson.com (Email)