## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DAVID A. SMILEY                    :
                                   :
               Plaintiff,          :        C.A.No.: I:07-005-SLR
                                   :
       v.                          :
                                   :
UNITED AUTOMOBILE, AEROSPACE :
AND AGRICULTURAL IMPLEMENT  :
WORKERS UNION,  LOCAL 1183         :
                                   :
               Defendant           :

## DEFENDANT, UAW LOCAL 1183'S
## OPENING BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

LAW OFFICES OF JOSEPH J. RHOADES
By:     Joseph J. Rhoades, Esquire (ID No. 2064)
1225 King Street, 12th Floor
P.O. Box 874
Wilmington, DE   19801
(Telephone) 302-427-9500
(Facsimile) 302-427-9509
*Attorney for Defendant*

**Dated:        July 15, 2008**

*Of Counsel:*
*Cleary & Josem LLP*
*William T. Josem, Esquire*
*Robert F. Henninger, Esquire*
*1650 Market Street, 51st Floor*
*Philadelphia, PA   19103*
*(Telephone)   (215) 735-9099*
*(Facsimile)   (215) 640-3201*

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    THE STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . 4

      B.    MR. SMILEY HAS FAILED TO EXHAUST HIS
            ADMINISTRATIVE REMEDIES; THEREFORE, SUMMARY
            JUDGMENT ON HIS TITLE VII CLAIMS IS APPROPRIATE . . . . . . . . . . . . 5

      C.    MR. SMILEY'S FAIR REPRESENTATION CLAIMS ARE
            UNTIMELY; THEREFORE, SUMMARY JUDGMENT
            IS APPROPRIATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      D.    MR. SMILEY HAD NO RIGHT TO HAVE HIS GRIEVANCE
            HEARD BY AN ARBITRATOR, AND A UNION DOES NOT
            BREACH ITS DUTY OF FAIR REPRESENTATION BY NOT
            SUBMITTING A GRIEVANCE TO ARBITRATION;
            THEREFORE, SUMMARY JUDGMENT ON THIS CLAIM
            IS APPROPRIATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      E.    THE UNION DID NOT DISCRIMINATE AGAINST
            MR. SMILEY; THEREFORE, SUMMARY JUDGMENT
            IS APPROPRIATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      F.    MR. SMILEY'S TORT CLAIMS ARE PREEMPTED BY
            FEDERAL LAW; THEREFORE, SUMMARY JUDGMENT
            ON THESE CLAIMS IS ALSO APPROPRIATE . . . . . . . . . . . . . . . . . . . . . 22

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases:**

*Adams v. Budd Company,*
    846 F.2d 428, 433-34 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ahmad v. United Parcel Service, Teamsters Local 773,*
    2008 U.S. App. LEXIS 12303, *8 (Ed Cir. June 9, 2008) . . . . . . . . . . . . . . . . . . . . . . 18

*Airline Pilots v. O'Neill,*
    499 U.S. 65, 67 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Allis-Chalmers Corp. v. Lueck,*
    471 U.S. 202, 220 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 248 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

*Bagby v. General Motors Corp.,*
    976 F.2d 919 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Bartles v. Sports Arena Employees Local 137,*
    838 F.2d 101 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bell v. Glass, Molders, Pottery, Plastics and Allied Workers Internat'l Union,*
    2002 U.S..LEXIS 27703 (W.D. Pa. August 29, 2002) . . . . . . . . . . . . . . . . . . . . . . . 11,19

*Best v. Janerich,*
    80 F.Supp.2d 334, 335 (M.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 322 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Chauffeurs, Teamsters and Helpers, Local 391 v. Terry,*
    494 U.S. 558, 563 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cook v. Lindsay Olive Growers,*
    911 F.2d 233 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*DelCostello v. Teamsters,*
    462 U.S. 151 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

-ii-

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases:**

*Durrette v. UGI Corp.,*
674 F.Supp. 1139, 1143 (M.D. Pa. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Findley v. Jones Motor Freight,*
638 F.2d 933 (3d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ford v. Christiana Care Health Systems,*
2008 U.S. Dist. LEXIS 38820, *11-12 (D. Del. May 13, 2008) . . . . . . . . . . . . . . . . . . 6

*Guilliame v. Int'l Service System, Inc., et al.,*
2000 U.S. Dist. LEXIS 507 (S.D. N.Y. January 18, 2000) . . . . . . . . . . . . . . . . . . . . . . . 7

*Hackman v. Valley Fair,*
932 F.2d 239 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hurst v. Consolidated Freightways Corp.,*
133 LRRM 2652, 2659 (M.D. Pa. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Marquez v. Screen Actors Guild, Inc.,*
525 U.S. 33, 44 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574, 586 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Matter v. Bethlehem Steel Corp.,*
797 F.Supp. 441, 445 (W.D. Pa. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*McDonnell-Douglas v. Green,*
411 U.S. 792, 798 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,19

*Milione v. Hahnemann University,*
141 LRRM 2814, 2818 (E.D. Pa. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Mock v. T.G. & Y. Stores Company,*
971 F.2d 522 (10th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Ochiver v. Levine Fishbein, Sedran & Berman,*
38 F.3d 1380, 1386-87 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases:**

*Ostapowicz v. Johnson Bronze Co.,*
   541 F.2d 394, 398 (3d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pawchick v. Freedman's Express, Inc.,*
   664 F.Supp. 944, 958 (M.D. Pa. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Riley v. Letter Carriers Local No. 380,*
   688 F.2d 224, 228 (3d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Robinson v. Dalton,*
   107 F.3d 1018, 1020 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Schoch v. First Fidelity Bancorporation,*
   912 F.2d 654, 657 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Scott v. Local 863 International Brotherhood of Teamsters,*
   725 F.2d 226, 229 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Steelworkers v. Rawson,*
   495 U.S. 362 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Teamsters Local 174 v. Lucas Flour,*
   369 U.S. 95 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Textile Workers v. Lincoln Mills,*
   353 U.S. 448 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Vaca v. Sipes,*
   386 U.S. 171, 177 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,17,18

*Vadino v. A Valley Engineers,*
   903 F.2d 253, 260 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,13

*Walker v. The News Journal, et al.,*
   2008 U.S. Dist. LEXIS 22972, *10 (D.Del. March 24, 2008) . . . . . . . . . . . . . . . . . . . 6

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases:

*Weaver v. United Parcel Service, et al.,*
  2004 U.S. LEXIS 1314, *8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Weber v. Potter,*
  338 F.Supp.2d 600, 606 (E.D. Pa. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wilson v. American Postal Workers Union,*
  433 F.Supp.2d 444 (D. Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wishkin v. Potter,*
  476 F.3d 180, 184 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## Statutes:

19 Del.C. §§710-718 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Rule of Civil Procedure 56( c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Labor Management Relations Act
  §301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,22,23
  29 U.S.C. §185 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Title VII of the 1967 Civil Rights Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Title VII of the 1964 Civil Rights Act 2000e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,19

## I.   NATURE AND STAGE OF THE PROCEEDINGS[1]

On January 4, 2007,  Plaintiff David A. Smiley filed a claim against his former Employer, now known as Chrysler, LLC ("Chrysler" or the  "Employer").  On September 27, 2007, he moved to amend his pleading in order, among other things, to join the United Automobile, Aerospace and Agricultural Implement Workers Union (the "UAW") Local 1183 ("Local 1183" or the "Union") as a defendant (D.I. 17), which the Court granted on February 25, 2008 (D.I. 27).[2] Mr. Smiley filed his Amended Complaint against the Union on April 7, 2008 (D.I. 34).

Mr. Smiley served the Complaint on the Union on or about April 19, 2008, along with a paper discovery request to which, after a thirty (30) day extension granted by Mr. Smiley, the Union timely responded (D.I. 54, 55).  The Union has taken no discovery and has chosen to rely on discovery already completed in this case.  Mr. Smiley took no depositions.  Pursuant to the Court's original Scheduling Order, Chrysler and Mr. Smiley cross-moved for Summary Judgement on May 15, 2008 (D.I. 44, 45, 46). On June 3, 2008, after a telephone conference with all of the parties, the Court amended the Scheduling Order to allow the Union to submit its Motion (D.I. 59).  The Union now moves for summary judgment on all of Mr. Smiley's claims and, in support thereof, files this Opening Legal Brief.

---

[1] The Union incorporates by reference herein the "Nature and Stage of Proceedings" section contained in Chrysler's Opening Brief at 1-2, for greater background to this case.

[2] In general, the claims against the Union allege Title VII violations, breach of the Union's duty of fair representation to Mr. Smiley, and state tort claims.

## II.   SUMMARY OF ARGUMENT

The Union respectfully submits that Summary Judgment in its favor is appropriate and that Mr. Smiley's claims should be dismissed with prejudice for the following reasons:

Mr. Smiley has filed Title VII claims against the Union without first filing an administrative charge of discrimination against Local 1183, and the time to do so has now long expired. Failure to exhaust one's administrative remedies is a fatal flaw and, as a result, Summary Judgment is appropriate and the discrimination claims should be dismissed.

Likewise, Mr. Smiley's claims that the Union has breached its duty of fair representation (the "DFR claims") are also untimely and should be dismissed. It is well-settled that a disgruntled union member has only 180 days to file suit against a union for an alleged breach of duty of fair representation from the time that the member either knew or should have known that a union would take no further action on his behalf. In this case, more than 180 days has elapsed since Mr. Smiley knew or should have known that it would be futile for him to rely on the Union for any further assistance. Thus, the DFR claims, like the Title VII claims, are untimely and should be dismissed.

In addition, Mr. Smiley's claims that the Union breached its obligations to him by failing to submit his workplace grievance to arbitration are without merit. It is well-settled that a union member has no right to have a grievance submitted to arbitration and that a union does not breach its fair representation duty by refusing to submit a grievance to arbitration.

Should the Court address the case on the merits, it is clear on the facts that the Union has not discriminated against Mr. Smiley; in fact, contrary to Mr. Smiley's allegations in the Complaint, the Union has filed and processed a grievance challenging Mr. Smiley's termination from employment and negotiated his reinstatement to employment at Chrysler. Mr. Smiley, however, has ignored the

Union's resolution of the grievance because, he now admits, by the time the Union notified him of the resolution, Mr. Smiley had already filed an administrative charge against Chrysler, and he wished to pursue that charge to a resolution.

Finally, Mr. Smiley's tort claims are preempted by federal law and, therefore, Summary Judgment on these claims, too, is appropriate.


## III.    STATEMENT OF FACTS[3]

After Chrysler terminated Mr. Smiley, he contacted his Union representative who filed a grievance on his behalf. (Grievance, A22).[4] Chrysler initially denied the grievance (Heitzman Aff. A20, ¶5)[5]. The Union appealed the denial and continued to meet with Chrysler representatives who, after several negotiating sessions, agreed to reinstate Mr. Smiley's employment. (*Id.*) The Union notified Mr. Smiley of this development by April 3, 2006 correspondence, explaining to him that "the Union and Management had reached a comparable decision on your behalf for your reinstatement of employment." (April 3, 2006 correspondence, A23; Heitzman Aff. A20-21, ¶5.) The letter requested that Mr. Smiley contact the Union representative within five (5) days to discuss "his continued employment at Daimler Chrysler." (*Id.*)

---

[3] The Union directs the Court to Chrysler's Opening Brief in Support of its Motion and its Statement of Facts contained at 4-10 for the facts which proceeded Mr. Smiley's termination, which the Union incorporates by reference herein.

[4] Pertinent documentary evidence and excerpts of Mr. Smiley's deposition transcripts in this case are included in the Union's Appendix to this Opening Brief, referred to as "A" followed by the appropriate page number.

[5] The original affidavit of Chrysler's Human Resources Manager Steve Heitzman is contained in Chrysler's Appendix to its Opening Brief at 249-251 and is reproduced for the Court's convenience in the Union's Appendix.

Mr. Smiley received a copy of this letter shortly thereafter. (Smiley Dep. at 191-92, A5-6; signed Post Office delivery receipts, A24.) Rather than promptly respond to the Union, Mr. Smiley instead decided to not pursue the reinstatement offer and instead devoted his attention to the charge of discrimination which he had filed against Chrysler with the Delaware Department of Labor (the "DDOL") and the Equal Employment Opportunity Commission (the "EEOC"). (Smiley Dep. at 194, 199, A8, A13; Charge of Discrimination, A15; Heitzman Aff. A21, ¶6.)

To this day, Mr. Smiley has not contacted the Union regarding the settlement of his grievance and his return to employment at Chrysler, nor has he filed a charge of discrimination against the Union with either the EEOC or DDOL.

## IV.    ARGUMENT

### A.    THE STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 (c) provides that the moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56 ( c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). A fact is "material" if proof of its existence or non-existence might effect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007).

Once the moving party has satisfied its burden of showing the absence of a genuine issue concerning any material fact, the non-moving party "must present affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256-57. "Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials." *Best v. Janerich*, 80 F.Supp.2d 334, 335 (M.D. Pa. 1999)(citing *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990)). Rule 56 requires the entry of summary judgment, after adequate time for discovery, where a party, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Best*, 80 F.Supp.2d at 336 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**B.    MR. SMILEY HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES; THEREFORE, SUMMARY JUDGMENT ON HIS TITLE VII CLAIMS IS APPROPRIATE.**

Among other things, Mr. Smiley's Complaint charges the Union with violating his federal civil rights. Specifically, Mr. Smiley alleges that "the UAW Local 1183 violated my Title VII rights and the Civil Rights Act of 1967, as an American of African descent, in addition to discriminating against me because of my color, when it intentionally refused to honor the negotiated local agreement and failed to adequately represent a Union member." (Complaint at 1.)[6] Mr. Smiley further alleges that "additionally, I charge the UAW 1183, its agents and insurers, with violation of my rights as an American of African ancestry, applicable to Title VII of the 1964 Civil Rights Act 2000e." (*Id.* at 3.)

---

[6]Mr. Smiley's *pro se* Complaint is not prepared in numbered paragraph format. For this reason, references to the Complaint will be to the appropriate page number.

5

Before one files suit in court alleging violation of one's Title VII and related State rights, one must first file an administrative claim with the appropriate administrative agency. The timely filing of an administrative charge is a jurisdictional prerequisite, along with receipt of a "Right to Sue" letter, to filing a Title VII lawsuit. *See McDonnell-Douglas v. Green,* 411 U.S. 792, 798 (1973)(jurisdictional prerequisites to filing a federal claim of employment discrimination or the timely filing of a charge of discrimination with the EEOC and the receipt of a Notice of Right to Sue"); *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398 (3d Cir. 1976)("while preliminary requirements for a Title VII action are to be interpreted in a non-technical fashion, the aggrieved person is not permitted to bypass the administrative process.").    The Delaware courts have recognized that Title VII plaintiffs must exhaust their administrative remedies and have not hesitated to dismiss the complaints of those plaintiffs who have failed to do so. *See, e.g., Ford v. Christiana Care Health Systems,* 2008 U.S. Dist. LEXIS 38820, *11-12 (D. Del. May 13, 2008)("any Title VII claim or its state equivalent, 19 Del.C.§§710-718, such as job discrimination based on race or gender, or an ADA claim, requires the plaintiff to exhaust certain administrative remedies before suit may be filed in court . . . if the EEOC or equivalent state agency decides not (citation omitted) to pursue Plaintiff's claims, and issues a Right to Sue letter, only then may a plaintiff file suit in court.");    *Walker v. The News Journal, et al.,* 2008 U.S. Dist. LEXIS 22972, *10 (D. Del. March 24, 2008) ("the Third Circuit has interpreted those provisions to mean that a Title VII claim cannot be raised for the first time in a civil action.    That court has said that 'it is a basic tenet of administrative law that a plaintiff must exhaust all administrative remedies before bringing a claim for judicial relief.' *Robinson v. Dalton,* 107 F.3d 1018, 1020 (3d Cir. 1997).").

In this case, Mr. Smiley filed a charge of discrimination against Chrysler with both the EEOC

and the DDOL on or about August 2, 2005. (Charge of Discrimination A15.) Mr. Smiley received

a Final Determination and Right to Sue Notice from the DDOL on or about May 31, 2006. (A16-

17). Mr. Smiley also received a Notice from the EEOC on or about October 4, 2006 informing him

that the EEOC was adopting the findings of the DDOL and notifying him that he had ninety days to

file a lawsuit in either federal or state court. (A18). Those administrative filings were made entirely

against Chrysler, however, and not the Union. (A15).[7]

The time period within which Mr. Smiley could have timely filed an administrative charge

against the Union is now long past. Under Title VII, the limitations period begins to run on the date

Plaintiff knows or reasonably should have known a discriminatory act occurred, and "not on the date

the victim first perceived that a discriminatory motive caused the act." *Ochiver v. Levine Fishbein,*

*Sedran & Berman,* 38 F.3d 1380, 1386-87 (3d Cir. 1994).

In this case, the statute of limitations for Mr. Smiley's claims against the Union began to run

as early as August 2, 2005, the time when he filed his charge of discrimination against Chrysler. In

his Opening Brief in Support of his Motion for Summary Judgment against Chrysler, Mr. Smiley

makes clear that, at that time, he had pretty much given up on his Union and decided to take matters

into his own hands. (Opening Brief against Chrysler at 4: "because the Plaintiff received no reply

after numerous calls and messages left for UAW representatives in regards to if or when a grievance

was filed, or of its status, the Plaintiff subsequently filed a petition with the EEOC on 2 Aug 05,

charging the defendant with discrimination." (Reproduced for the Court's convenience at A14)). To

---

[7] It is not enough for Mr. Smiley to have filed against Chrysler. He must file a separate charge against the Union. *See, e.g., Guilliame v. Int'l Service System, Inc., et al.,* 2000 U.S. Dist. LEXIS 507 (S.D. N.Y. January 18, 2000).

be timely, his administrative charge should have been filed no more than 300 days after that date.

Giving Mr. Smiley the benefit of the doubt, the statute of limitations could have begun to run at a later date, sometime around April 2006, when he received the correspondence from his Union Committeeman, John Mehalchick, IV, in which the Union informed Mr. Smiley that it had settled the grievance and that, as part of the settlement, he was to be reinstated to employment. (April 13, 2006 correspondence, A23.) At that time, however, Mr. Smiley decided not to pursue the grievance any further, and in his deposition made clear that he was not happy that the Union had compromised his grievance:

> Q:    From the time you received the letter to the present day, you haven't talked to him [Mehalchick] about the contents of this letter?
>
> A:    No.
>
> Q:    Did you talk to anybody at the Union about it?
>
> A:    No, because after you are ignored so many times, you just kind of I'll leave it alone and I pursued this another way.
>
> Q:    So this says that they have reached a comparable decision on your behalf for your reinstatement of employment. Did you want to come back and be reinstated?
>
> A:    Well, I was still - we had some issues that needed to be cleared up. Again, it shouldn't have happened in the first place. And then, like I said, by then I was speaking with the EEOC on this and that was prior to my filing with the court for why we are here today.
>
> Q:    Right, you don't really know what the comparable decision turned out to be. Right?
>
> A:    Well, basically it did not say David Smiley, you are reinstated. It says a compromise had been reached. What

8

compromise? There's nothing to compromise if you have everything that you need.

Q:    After you left the message for John within the five-day period, did you keep trying?

A:    No, because like I said, I have called before and I never got any response. Like I said, every now and then you can catch him, but other times you can't.

(Smiley Dep. at 193-194, A7-8).

Once informed of the settlement of the grievance, Mr. Smiley simply ignored his reinstatement at Chrysler:

Q:    You weren't even curious about what the decision was?

A:    They had pretty much did what they were going to do to me and whatever I say really wasn't going to make a whole heck of a lot of difference.

Q:    But you didn't know, though, what they were going to do?

A:    I do know that they didn't reinstate me.

Q:    But could that have been because you never called them back and got in touch with them. I am trying to understand.

A:    No. Going by this letter, again, "continued employment" versus "reinstatement," two different terms. Compromise, what's to compromise? What did I do wrong? I did everything by the book how they asked me to do it.

Q:    Are you basically telling me that you just decided once you read this letter that it wasn't worth pursuing?

A:    I called. I didn't hear anything else. And no, I did not pursue it. Once I called and I didn't receive my response, I figured, hey, they're doing what they want to do. Obviously it's not in my best interest.

(Smiley Dep. at 195-196, A9-10).

9

More than 300 days have elapsed since April 2006, when Mr Smiley received notice of the outcome of the grievance. Mr. Smiley has not filed an administrative claim against the Union prior to filing this law suit, and even under the most liberal interpretation of the facts, the deadline for doing so has now long expired. For this reason, the Union respectfully submits that Mr. Smiley's Title VII claims are untimely and that Summary Judgment on these claims should be granted in its favor.

## C.    MR. SMILEY'S FAIR REPRESENTATION CLAIMS ARE  UNTIMELY; THEREFORE, SUMMARY JUDGMENT IS APPROPRIATE .

Numerous paragraphs in Mr. Smiley's Complaint allege, in one form or another, a breach of duty of fair representation claim(s) against the Union. For example, in the first paragraph, Mr. Smiley alleges that "UAW Local 1183 through its representatives, its President, representative shop stewards and insurers, created a breach of duty of fair representation, when upon my termination on May 13, 2005, UAW Local 1183, failed to enter a grievance on my behalf." Likewise, on the second page of his Complaint, Mr. Smiley alleges that "the UAW acted in a perfunctory manner in regards to its failure to properly conduct an investigation into the facts concerning my termination of employment from Daimler Chrysler Corporation and the ineffective representation of a Union member." Mr. Smiley goes on, both on this page and onto the third page of his Complaint, alleging that "as a result of the breach of fair representation by the UAW Union Local 1183, I have suffered an economic loss due to its Union official's failure to represent me fairly regarding my termination of employment at the Daimler Chrysler Corporation."

The duty of fair representation requires a union to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and

honesty, and to avoid arbitrary conduct. *Chauffeurs, Teamsters and Helpers, Local 391 v. Terry*, 494 U.S. 558, 563 (1990)(citing *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)).  A union owes a duty of fair representation to its members, which requires that a union "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."  In other words, a union breaches its duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith.  *Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 44 (1998)(citing *Airline Pilots v. O'Neill*, 499 U.S. 65, 67 (1991)(citing *Vaca v. Sipes,* 386 U.S. 171, 190 (1967); *Wilson v. American Postal Workers Union*, 433 F.Supp. 2d 444 (D.Del. 2006).

A union's actions are arbitrary if, at the time the union made its decision, the actions were so "far outside a wide range of reasonableness as to be irrational." *O'Neill*, 499 U.S. at 67; *see also Wilson*, 433 F.Supp.2d at 448.  The "'wide range of reasonableness' standard allows the union to make discretionary judgments and decisions without fear of liability should those judgments ultimately be wrong." *Marquez*, 525 U.S. at 45 - 46; *Wilson*, 433 F.Supp.2d at 448.

In order "[t]o establish discrimination or bad faith, courts look at the union's subjective intent.  Specifically, the plaintiff must show subjective hostility toward the plaintiff or the plaintiff's class and that the hostility adversely effected the union's representation." *Id.* (*citing Adams v. Budd Company,* 846 F.2d 428, 433-34 (7th Circuit 1988).  And, to demonstrate bad faith, Mr. Smiley must show that the Union had hostility toward him and that the hostility negatively affected the Union's representation of him.  *Bell v. Glass, Molders, Pottery, Plastics and Allied Workers International Union,* 2002 U.S. Dist. LEXIS 27703 (W.D. Pa. August 29, 2002).

11

In carrying out its duty of fair representation, "a union has 'broad discretion in its decision whether and how to pursue an employee's grievance against an employer.'" *Weber v. Potter,* 338 F.Supp. 2d 600, 606 (E.D.Pa. 2004).

In *DelCostello v. Teamsters,* 462 U.S. 151 (1983), the United States Supreme Court was asked to determine the statute of limitations to apply to a suit brought by an employee against his employer and union, alleging a breach of the collective bargaining agreement by the employer and a breach of the duty of fair representation by the union by mishandling the ensuing grievance and arbitration proceeding. The Court recognized as a threshold matter that "such a suit as a formal matter comprises two causes of action. The suit against the employer rests against §301[Section 301 of the Labor Management Relations Act, 29 U.S.C. §185]. The suit against the union is one for breach of the union's duty of fair representation . . . yet the two claims are inextricably interdependent." *Id.* at 164 (citation omitted). The Court acknowledged that in order to prevail, plaintiffs "must not only show that their discharge was contrary to the contract, but must also carry the burden of demonstrating the duty of fair representation by the union." *Id.* at 165 (citations omitted). The Court held that such claims must be brought within six months. (*See Hackman v. Valley Fair, 932* F.2d 239 (3d Cir. 1991); *Bartels v. Sports Arena Employees Local 137,* 838 F.2d 101 (3d Cir. 1988)).

The six-month statute of limitations period commences when "complainant discovers, or in the exercise of reasonable diligence, should have discovered, the acts constituting the alleged violation." *Hackman,* 932 F.2d at 241 (citing *Vadino v. A Valley Engineers,* 903 F.2d 253, 260 (3d Cir. 1990). It is equally well-established that the limitations period commences when the "futility" of relying on the union's assistance "became apparent or should have become apparent" to the

employee. *Matter v. Bethlehem Steel Corp.,* 797 F.Supp. 441, 445 (W.D. Pa. 1992) (citing *Vadino,* 903 F.2d at 260); *see also Scott v. Local 863 International Brotherhood of Teamsters*, 725 F.2d 226, 229 (3d Cir. 1984).

In this case, Mr. Smiley first sought to amend his Complaint to add a claim against the Union on September 27, 2007. The issue, then, is whether by March 27, 2007 (six months before he filed his Motion to Amend and add a claim against the Union) Mr. Smiley knew or should have known that continuing to rely on the Union would be futile. If so, his DFR claims against the Union are untimely.

In his Opening Brief against Chrysler, Mr. Smiley makes clear that as of August 2, 2005, when he filed a charge against Chrysler, he believed that further reliance on the Union would be futile: "because the plaintiff received no reply after numerous calls and messages left for UAW representatives in regards to if or when a grievance was filed or its status, the plaintiff subsequently filed a petition with the EEOC charging the defendant with discrimination." (Plaintiff's Opening Brief at 4; A19). Thus, as of August 2, 2005, almost two years before Mr. Smiley moved to amend the Complaint to charge the Union with breaching its duty of fair representation, he knew or should have known that relying on the Union for anything more would have been futile.

Certainly, once he received the April 3, 2006 reinstatement letter from the Union, Mr. Smiley believed that further reliance on the Union would be futile. In his deposition, Mr. Smiley made clear that he was not happy with the result of the Union's action:

13

Q:    You did actually receive this letter sometime in April of 06?

A:    That is correct. Okay, I said April 16th. April 3rd but 2006. I know it was 2006.

Q:    You were saying that the second paragraph talks about reaching a comparable decision on your behalf for your reinstatement.

A:    Uh huh.

Q:    You got this letter and you saw that it said that.

A:    Uh huh.

Q:    What did you do at that point?

A:    Tried to contact John. Didn't get in contact with him because I wanted to find out what's a comparable decision. Still to this day I do not know what a comparable decision is.

Q:    It says that you were supposed to contact them within five days, right?

A:    For your "continued employment." It's not continued employment if you are terminated.

Q:    Did you contact John within the five day period?

A:    I never got through to him, but I did call, yes.

Q:    At any point after you got this letter did you end up talking to him?

A:    We did not - we have not spoken actually since then, since the last time when he told me he was still working on it. It was shortly before this and he's like, we're working on it. And that was the last conversation that we really had had.

(Smiley Dep. at 191-193, A5-7).

14

Despite notice that the Union had settled the grievance, Mr. Smiley never contacted the

Union of Chrysler to return to work. Instead he chose to pursue his charge against Chrysler with the

EEOC:

> Q:     From the time you received the letter to the present day, you
>        haven't talked to him about the contents of this letter?
>
> A:     No.
>
> Q:     Did you talk to anybody at the Union about it?
>
> A:     No, because after you're ignored so many times, you just kind
>        of I'll leave it alone and I pursued this another way.
>
> Q:     So this says that they have reached a comparable decision on
>        your behalf for your reinstatement of employment. Did you
>        want to come back and be reinstated?
>
> A:     Well, I was still, we had some issues that needed to be cleared
>        up. Again, it shouldn't have happened in the first place. And
>        then, like I said - by then I was speaking with the EEOC on
>        this and that was prior to my filing with the  courts for why
>        we are here today.

(Smiley Dep. at 193-194, A7-8).

And once he read the April 3, 2006 correspondence, Mr. Smiley believed there was nothing

more the Union could do that would make him happy:

> Q:     But weren't you interested in hearing what the decision would
>        have been because it does say "for your reinstatement?"
>
> A:     A comparable decision. It did not say I was reinstated. It says
>        a comparable - "comparable decision on your behalf for your
>        reinstatement." So it didn't say I was reinstated. Basically
>        you are somehow - somewhere there was a compromise made
>        and that's basically it. It did not specific, you are reinstated.
>        Like I said, you are continued.  Again, it doesn't say
>        "reinstated." "Continued." How can I continue if I have been
>        terminated?

15

Q:    You weren't even curious about what the decision was?

A:    "They had pretty much did what they were going to do to me and whatever I say really wasn't going to make a whole heck of a difference."

Q:    But you didn't know, though, what they were going to do.

A:    I do know that they didn't reinstate me.

Q:    But could that have been because you never called them back and got in touch with them?  I am trying to understand.

A:    No.  Going by this letter, again, "continued employment" versus "reinstatement," two different terms.  Compromise, what's to compromise?  What did I do wrong?  I did everything by the book how they asked me to do it.

Q:    Are you basically telling me that you just decided once you read this letter that it wasn't worth pursuing?

A:    I called.  I didn't hear anything else.  And no, I did not pursue it.  Once I called and I didn't receive my response, I figured, hey, they're doing what they want to do.  Obviously it's not in my best interest.

(Smiley Dep. at 194-196, A8-10).

    Finally, on January 4, 2007, Mr. Smiley filed suit against Chrysler alleging that he was unlawfully terminated.  Surely, by bringing his own claim against Chrysler for unlawful termination, Mr. Smiley either knew or should have known that continued reliance on the Union would be futile. But, Mr. Smiley did not move to amend his Complaint to add the Union until September 27, 2007 almost nine months later.  Mr. Smiley's DFR claims against the Union are simply untimely, and the Union therefore respectfully submits that summary judgment is appropriate.

16

**D.      MR. SMILEY HAD NO RIGHT TO HAVE HIS GRIEVANCE HEARD BY AN ARBITRATOR, AND A UNION DOES NOT BREACH ITS DUTY OF FAIR REPRESENTATION BY NOT SUBMITTING A GRIEVANCE TO ARBITRATION; THEREFORE, SUMMARY JUDGMENT ON THIS CLAIM IS APPROPRIATE**

In addition to these other claims, Mr. Smiley also alleges that the Union breached its duty of fair representation when it failed to submit his grievance to an arbitrator.  At the bottom of the third page of his Complaint Mr. Smiley alleges that "further, I charge that the Union UAW Local 1183, its agents and insurers, with a failure to make a decision on whether or not to arbitrate. Finally, for a failure to notify the grievant of a decision not to arbitrate in time for the grievant to pursue other available remedies available.  Poor quality of presentation and extreme negligence in investigation and extreme passivity in case preparation."  In addition, on the last page of his Complaint, Mr. Smiley alleges "in closing, the perfunctory handling of an arbitration case, which effectively prevents factual proof of the grievant's position."

The law in this area is clear: an individual union member has no right to have a grievance submitted to arbitration and a union does not breach its duty of fair representation by not submitting a workplace grievance to arbitration.  It is well-established, under federal common law, that individual union members have no absolute right to have their grievances heard in arbitration.  The Supreme Court has determined that a union is not required to pursue every grievance to arbitration and that its failure to do so is not a breach of its duty of fair representation. *Vaca v. Sipes,* 386 U.S. 175, 191-192 (1967).  If a member had such a right, the grievance and arbitration process itself could potentially become overburdened and eventually break down.  According to the Court:

17

> If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus, destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation.  Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration.  This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully.

*Id.* at 191-192.

According to the Court, unions must be given substantial deference in deciding whether a grievance is worthy of being heard at arbitration.  And a union's exercise of such discretion does not breach its fair representation duty.  Notably, the Court recognized that "if a union's decision that a particular grievance lacks sufficient merit to justify arbitration would constitute a breach of the duty of fair representation because a judge or jury later found the grievance meritorious, the union's incentive to settle such grievances short of arbitration would be seriously reduced.  The dampening effect on the entire grievance procedure of this reduction of the union's freedom to settle claims in good faith would surely be substantial." *Id.* at 192-193; *see also Ahmad v. United Parcel Service, Teamsters Local 773,* 2008 U.S.App. LEXIS 12303, *8 (3d Cir. June 9, 2008) ("the law is clear that there is no absolute right to arbitration.")(citing *Vaca,* 386 U.S. at 191).

Mr. Smiley had no absolute right to have his grievance heard by an arbitrator, and the Union did not breach its duty of fair representation to him by not submitting the grievance to an arbitrator.  Accordingly, the Union respectfully submits, Summary Judgment on these claims is appropriate.

18

**E.     THE UNION DID NOT DISCRIMINATE AGAINST MR. SMILEY; THEREFORE, SUMMARY JUDGMENT IS APPROPRIATE**

Whether Mr. Smiley's claims are timely or not, the facts demonstrate that the Union did in fact file and pursue Mr. Smiley's grievance protesting his termination from Chrysler and actually obtained his reinstatement to employment.

Since Mr. Smiley cannot point to any direct evidence of discrimination, he must proceed under the indirect, burden-shifting framework. The Supreme Court has established the by-now familiar three-step, burden-shifting framework for the presentation of evidence in discriminatory treatment cases litigated under Title VII of the Civil Rights Act of 1964. *See McDonnell-Douglas v. Green*, 411 U.S. 792 (1973). This same burden-shifting analysis applies to claims against unions. *See Bell v. Glass Molders Pottery Plastics and Allied Workers International Union,* 2002 U.S.Dist. LEXIS 27703 (M.D. Pa. August 29, 2002). First, in order to survive summary judgment, a plaintiff must make out a *prima facie* case of racial discrimination by showing the following: (1) he is a member of a protected class; (2) he was qualified; (3) an adverse employment action was taken against him by defendant; and (4) similarly situated non-minority employees were treated differently. If the plaintiff carries that burden, the defendant must then articulate a facially non-discriminatory reason for the challenged employment action. If the defendant makes such a showing, the burden reverts to the plaintiff to prove the proffered non-discriminatory reason is pretextual.

Mr. Smiley has no evidence that the Union has treated similarly situated white employees (or any other employees for that matter) any differently than it did him. In fact, contrary to Mr. Smiley's allegations in his Complaint, the evidence shows that the Union actually filed a grievance shortly after Mr. Smiley's termination from employment, persisted through levels of appeals with

19

Chrysler, and ultimately obtained Mr. Smiley's reinstatement to employment. The grievance form refers to "numerous" discussions between Union Representative Mehalchick and two separate management officials, a "Mr. Asquith" and a "Mr. Heitzman" with whom the Union discussed the grievance. (A22). In his Affidavit, Mr. Heitzman concurs that it took several negotiating sessions between the Union and Chrysler before Chrysler agreed to reinstate Mr. Smiley's employment (A20, ¶5). The Union notified Mr. Smiley of that resolution by letter dated April 3, 2006 (A23), which Smiley received.[8] (Post Office signature cards, A24.)

Although the Union pursued the grievance for several months and eventually gained his reinstatement, in the end Mr. Smiley basically just walked away without returning to Chrysler, determined to pursue his claim against Chrysler through the administrative agencies:

> Q:    To this day you don't know what the actual decision was that they reached, the Union and the management?
>
> A:    I have to say no, I don't.
>
> Q:    Did you have any more conversations with anybody affiliated with the Union after you received this letter?
>
> A:    No. I was pretty much in the middle of pursuing where we are at now. Like I said, I still have to tie up ends with the EEOC and then there was an appeal made to the Philadelphia District. You have all of this stuff.
>
> Q:    So at that point you just figured, I'm just going to pursue this through the EEOC process?

---

[8] That correspondence indicates that the grievance had actually been resolved for some time before this and that the Union had been attempting, without success, to contact Mr. Smiley (A23). Mr. Smiley, however, claims to have no specific recollection of a conversation where the Union told him a decision had been reached. (Smiley Dep. at 197, A11.)

> A:   Yes. I figured at least if anything I might get at least a straight answer out of something, at least a call back, which they didn't.

(Smiley Dep. at 199, A13.)

Although Mr. Smiley may complain that the process took longer than he would have liked and, for that reason, he believes the Union mishandled the grievance, mere delay, without more, is simply not enough for him to prevail and defeat the Union's Motion. In fact, even if Mr. Smiley could demonstrate that the delay was caused by the Union's inept, careless, or negligent handling of his grievance, this still would not be enough. *See Weaver v. United Parcel Service, et al.,* 2004 U.S. LEXIS 1314, *8 ("the Third Circuit has advised that 'mere ineptitude or negligence in the presentation of a grievance by a union has almost uniformly been rejected as the type of conduct' that would breach the union's duty to its members.") (citing *Riley v. Letter Carriers Local No. 380,* 688 F.2d 224, 228 (3d Cir. 1981)); *see also Findley v. Jones Motor Freight,* 638 F.2d 933 (3d Cir. 1981) (inept, careless, lackluster, or grossly negligent conduct is not necessarily a breach of the duty of fair representation if the union commits a mistake in its grievance handling).

There is absolutely no evidence that the Union has discriminated against Mr. Smiley in any way. In fact, contrary to Mr. Smiley's allegations, the evidence shows that the Union filed a grievance protesting Mr. Smiley's termination from employment, processed that grievance, and ultimately obtained Mr. Smiley's reinstatement to employment. The only reason Mr. Smiley is not employed at Chrysler today is that he chose to ignore the outcome. For this reason, Summary Judgment is appropriate.

**F.    MR. SMILEY'S TORT CLAIMS ARE PREEMPTED BY FEDERAL LAW; THEREFORE, SUMMARY JUDGMENT ON THESE CLAIMS IS ALSO APPROPRIATE.**

Finally, in his Complaint Mr. Smiley brings a personal injury-type claim against

the Union.  On page 3 of the Complaint, Mr. Smiley alleges that "because of the breach of the

contract by the leadership of the UAW Local Union 1183, its agents and insurers, I have suffered

emotional distress and harm to my reputation . . ."). It is long-settled, however, that claims of this

type for emotional distress and harm to reputation are preempted by well-established federal law.

It is without question that where state tort claims are based on alleged violations of a collective

bargaining agreement, those claims are completely preempted by Section 301 of the Labor-

Management Relations Act.  The United States Supreme Court has unequivocally held that "where

resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement

made between the parties' labor contract, that claim must either be treated as a Section 301 claim

or dismissed as preempted by federal labor law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220

(1985). According to the Court, if evaluating state tort claims will be "inextricably intertwined" with

consideration of the terms of the labor contract, the claim should be dismissed as preempted by

Section 301. *Id.* at 213.

In *Teamsters Local 174 v. Lucas Flour,* 369 U.S. 95 (1962), the Court emphasized that

Section 301 calls for "uniform law" and concluded that "Congress, in enacting Section 301, intended

federal labor law to prevail over inconsistent local law." *Id.* at 103-104.  Thus, Section 301

preemption is based upon Congress' intent that a comprehensive, unified body of federal law should

govern the interpretation of collective bargaining agreements. Within Section 301's domain, all state

law regulation is prohibited.

22

In *Steelworkers v. Rawson*, 495 U.S. 362 (1990), the Supreme Court held that:

> Since [*Textile Workers v. Lincoln Mills,* 353 U.S. 448 (1957)] the Court has made clear that Section 301 is a potent source of federal labor law, for although state courts have concurrent jurisdiction over controversies involving collective bargaining agreements, [citations omitted] state courts must apply federal law in deciding those claims [citations omitted] and indeed any state law cause of action for violation of a collective bargaining agreement is entirely displaced by federal law under Section 301 [citation omitted]. State law is thus 'preempted' by Section 301 in that only the federal law fashioned by the courts under Section 301 governs the interpretation and application of collective bargaining agreement.

*Id.* at 368.

Thus, the only question concerning preemption under Section 301 is whether a state law action is based on a claim of rights or duties under a collective bargaining agreement. If it is, then it is preempted.

It is well-settled that claims for harm to reputation are preempted by Section 301. *See, e.g., Hurst v. Consolidated Freightways Corp.,* 133 LRRM 2652, 2659 (M.D. Pa. 1989) (all allegations of defamation are preempted since they all relate to whether the defendant properly discharged the plaintiff under the collective bargaining agreement); *Durrette v. UGI Corp.,* 674 F.Supp. 1139, 1143 (M.D. Pa. 1987) (slander claim "necessarily preempted by Section 301" since it was "inextricably intertwined with the question of whether the defendant properly discharged the plaintiff."); *Pawchick v. Freedman's Express, Inc.,* 664 F.Supp. 944, 958 (M.D. Pa. 1986) (defamation claim preempted since it was based on the same acts and conduct which formed the basis for plaintiff's breach of fair representation claim).

Likewise, emotional distress claims are also preempted where those claims are inextricably intertwined with the interpretation of a collective bargaining agreement. *See, e.g., Milione v.*

23

*Hahnemann University,* 141 LRRM 2814, 2818 (E.D. Pa. 1990) ("because an examination of the validity of [plaintiff's] emotional distress claim clearly requires [the court] to determine whether [plaintiff's] discharge was justified under the terms of the collective bargaining agreement, disposition of [plaintiff's] claim. . .is not possible without analyzing and interpreting the collective bargaining agreement."); *see also Bagby v. General Motors Corp.,* 976 F.2d 919 (5th Cir. 1992) (court reasons that plaintiff's claim of intentional infliction of emotional distress which arose as a result of the manner in which he was discharged could not be decided without interpretation of the collective bargaining agreement); *Mock v. T.G. & Y. Stores Company,* 971 F.2d 522 (10th Cir. 1992) (state law claim for intention infliction of emotional distress preempted by Section 301 because determining whether employer acted properly would require analysis of what the collective bargaining agreement permitted); *Cook v. Lindsay Olive Growers,* 911 F.2d 233 (9th Cir. 1990) (claim for intentional infliction of emotional distress preempted).

  In this case, Mr. Smiley charges the Union with, among other things, failing to enter a grievance on his behalf challenging his termination (Complaint at 1), violating his Title VII rights "when it intentionally refused to honor the negotiated Local Agreement ..." (*Id.*), acting in a perfunctory manner "in regards to its failure to properly conduct an investigation into the facts concerning my termination ..." (*Id.* at 2), and "with a failure to make a decision on whether or not to arbitrate." (*Id.* at 3). Resolution of these claims will require an analysis and interpretation of the collective bargaining agreement and, for this reason, Mr. Smiley's tort claims are preempted.

## V.    CONCLUSION

For all of these reasons, the Union respectfully requests that Summary Judgment be granted in its favor and that all of Mr. Smiley's claims against it be dismissed with prejudice.

Respectfully submitted,

**LAW OFFICES OF JOSEPH J. RHOADES**

By:   /s/ JOSEPH J. RHOADES, ESQUIRE
Joseph J. Rhoades, Esquire (ID No. 2064)
***Attorney for Defendant***

**Dated:    July 15, 2008**

25

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID A. SMILEY | : | |
| | : | |
| **Plaintiff,** | : | **C.A.No.: I:07-005-SLR** |
| | : | |
| v. | : | |
| | : | |
| UNITED AUTOMOBILE, | : | |
| AGRICULTURAL AND AEROSPACE | : | |
| IMPLEMENT WORKERS UNION, | : | |
| UAW LOCAL 1183 | : | |
| | : | |
| **Defendant** | : | |

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the within document to be served on the below listed persons on the date and in the manner listed below:

**UPS Overnight Mail:**          David A. Smiley, *pro se*
814 Village Circle - Apartment B
Newark, DE   19713

**Electronic Mail:**          Jennifer Gimler Brady, Esquire (I.D. No. 2874)
jbrady@potteranderson.com
Jennifer Wasson, Esquire (I.D. No. 4933)
jwasson@potteranderson.com
Potter, Anderson and Corroon, LLP
Hercules Plaza - 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE   19899-0951

**LAW OFFICES OF JOSEPH J. RHOADES**

By:   /s/ JOSEPH J. RHOADES, ESQUIRE
Joseph J. Rhoades, Esquire (ID No. 2064)
*Attorney for Defendant*

**Dated:     July 15, 2008**

26