## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| DAVID A. SMILEY | : | |
| | : | |
| Plaintiff, | : | C.A.No.:  I:07-005-SLR |
| | : | |
| v. | : | |
| | : | |
| UNITED AUTOMOBILE, AEROSPACE | : | |
| AND AGRICULTURAL IMPLEMENT | : | |
| WORKERS UNION,  LOCAL 1183 | : | |
| | : | |
| Defendant | : | |

## APPENDIX TO DEFENDANT UAW LOCAL 1183'S
## OPENING BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

**LAW OFFICES OF JOSEPH J. RHOADES**
By:  Joseph J. Rhoades, Esquire (ID No. 2064)
1225 King Street, 12th Floor
P.O. Box 874
Wilmington, DE   19801
(Telephone) 302-427-9500
(Facsimile) 302-427-9509
*Attorney for Defendant*

**Dated:    July 15, 2008**

*Of Counsel:*
*Cleary & Josem LLP*
*William T. Josem, Esquire*
*Robert F. Henninger, Esquire*
*1650 Market Street, 51st Floor*
*Philadelphia, PA   19103*
*(Telephone)   (215) 735-9099*
*(Facsimile)   (215) 640-3201*

## TABLE OF CONTENTS

Pertinent Pages of Plaintiff's Deposition Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1

Excerpt from Plaintiff's Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A14

Plaintiff's Charge of Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A15

Final Determination - State of Delaware, Department of Labor
       Issued May 31, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A16

EEOC Dismissal and Notice of Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A18

Affidavit of Steve Heitzmann . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A19

Grievance Form . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A22

Letter dated April 3, 2006 from John Mehalshick, IV,
       UAW Local 1183, to David Smiley . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A23

U.S. Postal Service Certified Mail Receipt (PS From 3811) . . . . . . . . . . . . . . . . . . . . . . . . A24

CERTIFICATE OF SERVICE



**WILCOX & FETZER LTD.**

In the Matter Of:

# Smiley

## v.

# DaimlerChrysler

## C.A. # 1:07-005 SLR

Transcript of:

# David A. Smiley

## Volume # 2
## April 15, 2008

Wilcox and Fetzer, Ltd.
Phone: 302-655-0477
Fax: 302-655-0497
Email: depos@wilfet.com
Internet: www.wilfet.com

A000001

Smiley v. DaimlerChrysler

Page 136

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DAVID A. SMILEY,               )
                              )  VOLUME 2
       Plaintiff,             )
                              )
       v.                     )  C.A. No. 1:07-005 SLR
                              )
DAIMLER CHRYSLER,             )
                              )
       Defendant.             )

          Continued deposition of DAVID A. SMILEY
taken pursuant to notice at the law offices of Potter
Anderson & Corroon, LLP, 1313 North Market Street,
6th Floor, Wilmington, Delaware, beginning at 9:15 a.m.,
on Tuesday, April 15, 2008, before Kimberly A. Hurley,
Registered Merit Reporter and Notary Public.

APPEARANCES:

          JENNIFER C. WASSON, ESQUIRE
          POTTER ANDERSON & CORROON, LLP
            1313 North Market Street - 6th Floor
            Wilmington, Delaware 19801
            for the Defendant

                WILCOX & FETZER
      1330 King Street - Wilmington, Delaware 19801
                 (302) 655-0477
                 www.wilfet.com

Smiley v. DaimlerChrysler
David A. Smiley

Page 189

1    besides the president and John or that you did talk to,

2    let me rephrase that?

3        A.    No one else I did speak to outside of John

4    because it came from -- I'd have to say because it's

5    administrative, because Dawn fired me.  Basically who in

6    there is there to speak to?  They have the union side and

7    then they have the management side.  I spoke with the

8    union side because I'm not a member of management.  There

9    you go.

10        Q.    So during this time period you make what, one

11    contact with John between the time your grievance is

12    filed and you received the letter from him?

13        A.    There may have been others, but there was one

14    that we had a conversation on, because I mean, at the

15    same time John has -- how many people were there?  He has

16    over 100 people that he has to look out for.  So just

17    little old me and I'm no longer in there, I get to you

18    when I can.  I'm not mad about that, I have no problem

19    with that, I know sort of what your job entails, I know

20    what you have to deal with, so I can't get upset about

21    that.  All I know I did what I felt I had to do.

22        Q.    The grievance process, if the union and the

23    management reach a decision, is that decision binding on

24    you?

A000003

Smiley v. DaimlerChrysler
David A. Smiley

Page 190

1    A.    Don't know.  Never been in that situation

2    before.  I'd have to say the last time that a decision

3    was made on my behalf, it was somewhat binding, it's

4    still in my jacket.

5    Q.    If the union and the management agree on a

6    resolution and let's say you don't agree with the

7    resolution that they came to, do you have any way of

8    changing that, or is it binding on you in that sense?

9    A.    I guess it would have to be binding on me

10   perhaps -- I don't know.  I don't know.  I'm not really

11   sure.  But I'd have to say maybe yes, maybe yes.

12   Q.    Because is there any other avenue that you can

13   use to appeal that resolution?

14   A.    I went to EEOC.  That didn't work out.  Again,

15   that's pretty much how I ended up here.

16   Q.    The EEOC, let's not talk about them for a

17   second.  We can get to them later.  I'm talking about

18   within the union and Chrysler, within the sort of

19   disciplinary process.  If you'd keep it within the

20   company and the union.

21   A.    No one else that I can think of right offhand.

22   Q.    There's not an appeal procedure if you don't

23   like the decision that the union and the management made

24   on your behalf?  You can't take that anywhere?

Wilcox and Fetzer, Ltd.  Registered Professional Reporters    ... ... ...7

28ddf947-a16a-4272-8d90-bba85d3e648a

A000004

Smiley v. DaimlerChrysler
David A. Smiley

Page 191

1      A.      Not that I know of.  If it were, you probably

2   still be out in the street anyway until they decided to

3   come to a resolution.

4      Q.      Basically is the process at Chrysler and with

5   your union that the union represents you and the union is

6   supposed to advocate on your behalf and if they reach a

7   decision, it's supposed to be the decision for you?

8      A.      In an ideal scenario, yes.

9      Q.      Do you know if they reached a resolution of

10   your grievance?

11      A.      The letter from the 6th stated a comparable

12   decision was made.  Compromise to me is compromise.

13      Q.      Let's take a look at that letter here.

14                  Exhibit 17, please.

15                  (Smiley Deposition Exhibit No. 17 was

16   marked for identification.)

17                  MS. WASSON:  Can we go off the record?

18                  (Discussion off the record.)

19   BY MS. WASSON:

20      Q.      We're looking at Exhibit 17, right?

21      A.      Uh-huh.

22      Q.      Is this the letter that you were referring to?

23      A.      That would be correct.

24      Q.      You did actually receive this letter sometime

Wilcox and Fetzer, Ltd.  Registered Professional Reporters

28ddf947-a16a-4272-8d90-bba85d3e648a

A000005

Smiley v. DaimlerChrysler
David A. Smiley

Page 192

1    in April of '06?

2        A.    That is correct.  Okay, I said April 16th.

3    April 3rd.  But 2006.  I knew it was 2006.

4        Q.    You were saying that this second paragraph

5    talks about reaching a comparable decision on your behalf

6    for your reinstatement?

7        A.    Uh-huh.

8        Q.    You got this letter and you saw that it said

9    that.

10       A.    Uh-huh.

11       Q.    What did you do at that point?

12       A.    Tried to contact John.  Didn't get in contact

13   with him because I wanted to find out what's a comparable

14   decision.  Still to this day I do not know what a

15   comparable decision is.

16       Q.    It says that you're supposed to contact them

17   within five days, right?

18       A.    For your "continued employment."  It's not

19   continued employment if you're terminated.

20       Q.    Did you contact John within the five-day

21   period?

22       A.    I never got through to him, but I did call,

23   yes.

24       Q.    At any point after you got this letter, did you

Wilcox and Fetzer, Ltd.  Registered Professional Reporters    17

28ddf947-a16a-4272-8d90-bba85d3e648a

A000006

Smiley v. DaimlerChrysler
David A. Smiley

Page 193

1    end up talking to him?

2        A.    We did not -- we have not spoken actually since

3    then, since the last time when he told me he was still

4    working on it.  It was shortly before this and he's like,

5    we're working on it.  And that was the last conversation

6    that we really had had.

7        Q.    You contacted him.  Did you leave a message for

8    him?

9        A.    Yes.

10       Q.    After you got this letter?

11       A.    Yes.

12       Q.    He never called you back?

13       A.    I didn't receive the call.  So if he did, he

14   didn't leave a message that he had called, because at the

15   same time, I mean -- I'm trying to think of what I was

16   doing back then.  To the best of my knowledge, we hadn't

17   had a discussion.

18       Q.    From the time you received the letter to the

19   present day, you haven't talked to him about the contents

20   of this letter?

21       A.    No.

22       Q.    Did you talk to anybody at the union about it?

23       A.    No, because after you're ignored so many times,

24   you just kind of I'll leave it alone and I pursued this

28ddf947-a16a-4272-8d90-bba85d3e648a

A000007

Smiley v. DaimlerChrysler
David A. Smiley

Page 194

1    another way.

2        Q.    So this says that they have reached a

3    comparable decision on your behalf for your reinstatement

4    of employment.  Did you want to come back and be

5    reinstated?

6        A.    Well, I was still -- we had some issues that

7    needed to be cleared up.  Again, it shouldn't have

8    happened in the first place.  And then, like I said -- by

9    then I was speaking with the EEOC on this and that was

10   prior to my filing with the courts for why we're here

11   today.

12       Q.    Right.  You don't really know what the

13   comparable decision turned out to be, right?

14       A.    Well, basically it did not say David Smiley,

15   you are reinstated.  It says a compromise had been

16   reached.  What compromise?  There's nothing to compromise

17   if you have everything that you need.

18       Q.    After you left the message for John within the

19   five-day period, did you keep trying?

20       A.    No, because like I said, I have called before

21   and I never got any response.  Like I said, every now and

22   then you can catch him, but other times you can't.

23       Q.    But weren't you interested in hearing what the

24   decision would have been, because it does say "for your

Smiley v. DaimlerChrysler
David A. Smiley

Page 195

1    reinstatement"?

2        A.    A comparable decision.  It did not say I was

3    reinstated.  It says a comparable -- "comparable decision

4    on your behalf for your reinstatement."  So it didn't say

5    I was reinstated.  Basically you're somehow -- somewhere

6    there was a compromise made and that's basically it.  It

7    did not specify, you are reinstated.  Like I said, you're

8    continued.  Again, it doesn't say "reinstated."

9    "Continued."  How can I continue if I have been

10   terminated?

11       Q.    You weren't even curious about what the

12   decision was?

13       A.    They had pretty much did what they were going

14   to do to me and whatever I say really wasn't going to

15   make a whole heck of a lot of difference.

16       Q.    But you didn't know, though, what they were

17   going to do?

18       A.    I do know that they didn't reinstate me.

19       Q.    But could that have been because you never

20   called them back and got in touch with them?  I'm trying

21   to understand.

22       A.    No.  Going by this letter, again, "continued

23   employment" versus "reinstatement," two different terms.

24   Compromise, what's the compromise?  What did I do wrong?

Smiley v. DaimlerChrysler
David A. Smiley

Page 196

1    I did everything by the book how they asked me to do it.

2    Q.    Are you basically telling me that you just

3    decided once you read this letter that it wasn't worth

4    pursuing?

5    A.    I called.  I didn't hear anything else.  And

6    no, I did not pursue it.  Once I called and I didn't

7    receive my response, I figured, hey, they're doing what

8    they want to do.  Obviously it's not in my best interest.

9    Q.    You knew it wasn't in your best interest how,

10    because there was some kind of a compromise made?

11    A.    A compromise, continued.  Like I say, looking

12    at the letter, it does not state, you are reinstated.  It

13    does not say that on here.  Had it said that, then we

14    probably would not be sitting here, but it did not say

15    that.

16    Q.    The paragraph also says, "Per our conversation

17    dated Monday February 13, I had informed you that the

18    Union and Management had reached a comparable decision on

19    your behalf for your reinstatement of employment."

20    A.    What they should have read is we're working on

21    it.

22    Q.    On February 13th, 2006, do you think that was

23    the day that you had the call with John or can you

24    remember what he's talking about here when he says, "Per

Wilcox and Fetzer, Ltd.  Registered Professional Reporters          7

28ddf947-a16a-4272-8d90-bba85d3e648a

A000010

Smiley v. DaimlerChrysler
David A. Smiley

Page 197

1    our conversation"?

2        A.    Let's see.  He did not tell me that I was

3    reinstated.  That I can tell you.  John did not tell me

4    that.

5        Q.    Do you think that was the call that you

6    remember about how he said, oh, we're working on it?

7        A.    I'd have to say that's the one that I can

8    remember speaking with him.

9        Q.    So you don't have a specific recollection of a

10   conversation on February 13th, 2006, where he's talking

11   about a decision that had been reached?

12       A.    No.

13       Q.    Because this letter doesn't say particularly

14   that you had been reinstated.  It said we "reached a

15   comparable decision on your behalf for your

16   reinstatement," but it didn't say you're going to be

17   reinstated and that's the reason why you decided not to

18   continue to follow up?

19       A.    No, like I said, I called and didn't get a

20   response.  Again, compromise, whichever way you want to

21   do it is not saying you are reinstated.  You fired me

22   with no -- not saying you, but you fired me with no ifs,

23   ands, and buts and you're going to bring me back.  What

24   are we talking about?  What are we compromising?

28ddf947-a16a-4272-8d90-bba85d3e648a

A000011

Smiley v. DaimlerChrysler
David A. Smiley

Page 198

1    Q.    Would you have agreed to be reinstated with

2  some kind of compromise attached to it?  Like let's say

3  you did call, let's say you called and John said, hey,

4  they're going to reinstate you, but you're going to have

5  to stay on shift 2, or something like that, would that

6  have been something you would have agreed with?

7    A.    Going with answering your hypothetical, if John

8  were to say, you're reinstated, the thing is you have to

9  stay on second shift, that's different.  That's a whole

10  different scenario.

11    Q.    At the end of the day you don't know what the

12  decision was, right?

13    A.    I'd have to say --

14    Q.    What the compromise was.

15    A.    Again, because he did not exactly tell me what

16  it was or, like I said, again, compromise, what kind of

17  compromise?  You put in a grievance, you're compromising.

18  If I remember, compromise, well, I give something, you

19  get something.  We're kind of trying to meet in the

20  middle here wherein I did everything that I was supposed

21  to do.  You received no new information from me, not to

22  my knowledge, I was not made a party to any

23  investigations that were held.  So compromise what?

24  Again, a comparable decision, you did not specify that I

Smiley v. DaimlerChrysler
David A. Smiley

Page 199

1   was reinstated.  Again, continued employment versus

2   termination, reinstatement versus continuing.

3       Q.     To this day you don't know what the actual

4   decision was that they reached, the union and the

5   management?

6       A.     I'd have to say no, I don't.

7       Q.     Did you have any more conversations with

8   anybody affiliated with the union after you received this

9   letter?

10      A.     No.  I was pretty much in the middle of

11  pursuing of where we're at now.  Like I said, I still had

12  to tie up ends with the EEOC and then there was an appeal

13  made to Philadelphia district.  You have all this stuff.

14      Q.     So at that point you just figured, I'm just

15  going to pursue this through the EEOC process?

16      A.     Yes.  Figured at least if anything I might get

17  at least a straight answer out of something, at least a

18  call back, which they didn't.

19      Q.     We're wrapping up soon.  We have a couple

20  housekeeping things to just take care of.  I want to make

21  crystal clear, are there any other reasons that you think

22  that Chrysler discriminated against you based on your

23  disability?

24      A.     At this moment, as I sit, there's nothing I can

advantage". (See: D.I. _, Ex. P.)

On 16 MAY 05 the plaintiff was informed by a member of the human resource department at Chrysler to contact, his shop steward because his employment was terminated on 13 MAY 05. (See: D.I._, Ex. )Plaintiff then requested that grievance be filed against the Defendant on his behalf.

It was later learned that an accusation of forgery of the physician notes presented by the Plaintiff was made by the Defendant's employee Dawn Ford to H.R. personnel and the Plaintiff's Union Shop Steward.

Because the Plaintiff received no reply after numerous calls and messages left for UAW representatives in regards to if or when a grievance was filed or of its status, the Plaintiff subsequently filed a petition with the E.E.O.C. on 2 AUG 05, charging the Defendant with discrimination. During its investigation the EEOC sent a questionnaire to John Rutherford, in which states to have no knowledge of Mr. Smiley's situation, but does not direct them to interview the second shift union steward John Mahavlichek with regards to the incident. (See: D.I. , Ex. N.) The E.E.O.C. issued a finding of no cause and presented a right to sue letter; Plaintiff then appealed this decision with the Philadelphia District E.E.O.C., which again found no cause but issued a right to sue letter.

4

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974

Delaware Department of Labor

| ENTER CHARGE NUMBER |
|---|
| ☐ FEPA   030703529 |
| ☐ EEOC   170A803505 |

and EEOC (if applicable)

NAME (Indicate Mr., Mrs., Ms.)
David Smiley

HOME TELEPHONE NO. (Include Area Code)
(302) 426-0395

STREET ADDRESS
1955 Seneca Road

CITY, STATE AND ZIP CODE
Wilmington DE 19805   NCC

COUNTY

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one, list below.)

NAME
Daimler Chrysler Corporation

NO. OF EMPLOYEES OR MEMBERS  100+

TELEPHONE NUMBER (Incl. Area Code)
(302) 453-5850

STREET ADDRESS
550 South College Ave.

CITY, STATE AND ZIP CODE
Newark, DE 19711

NAME

TELEPHONE NUMBER (include Area Code)

STREET ADDRESS

CITY, STATE AND ZIP CODE

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN  ☐ AGE

☒ RETALIATION  ☒ DISABILITY  ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST  5/13/2005
LATEST  5/13/2005
☐ CONTINUING ACTION

DEPOSITION EXHIBIT
Smiley
KAH 4/9/05

THE PARTICULARS ARE (if additional space is needed, attached extra sheets):

Jurisdiction: Charging Party worked for Respondent since 04/06/99, most recently as a Tech I

Charging Party's protected class: Disability

Adverse employment action: Denied Reasonable Accommodation, Terminated

Brief statement of allegations: Charging Party alleges he was injured on the job and was considered and accepted initially for workman's compensation. At some point Charging Party was no longer eligible for workman's compensation and he ceased to receive these benefits. Charging Party alleges that he returned to work to perform an accommodated position but the assignment aggravated his impairment. It was at this time that it was determined that Charging Party would again go out of work on a medical leave. During his most recent medical leave Charging Party had a number of medical appointments with both Respondent's physician as well as his own, all of which he kept. During this time period Charging Party alleges that Respondent failed to provide him with another position which would be an accommodation so that he could return to work. Respondent stated that Charging Party failed to make one of the scheduled medical appointments and therefore was terminated. Charging Party alleges that Respondent terminated his employment because of his disability.

Respondent's explanation: Missed a medical appointment and failure to return to work

Applicable law(s): Americans with Disabilities Act and the Delaware Handicapped Persons Employment Protection Act

Comparator(s) or other specific reason(s) for alleging discrimination: None

Additional information and verification of these facts are provided by the attached Verification.

☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

SIGNATURE OF COMPLAINANT

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

EEO-5 DE
(REVISED)

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED

A000015

STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS – DISCRIMINATION PROGRAM

David Smiley                                           Case No. 05080352W
1956 Seneca Road
Wilmington, DE 19805

vs.

DAIMLER CHRYSLER CORPORATION
550 S. College Ave.,
Newark, DE 19711

FINAL DETERMINATION AND RIGHT TO SUE NOTICE

Pursuant to 19 Del. C. § 710, et seq., the parties in the above-captioned matter are hereby Noticed of the Department's Final Determination and Right to Sue Notice, as follows:

*No-Cause Determination and Dismissal with Corresponding Right to Sue Notice.*

In this case, the Department has completed its investigation and found that there is no reasonable cause to believe that an unlawful employment practice has occurred. The Department hereby issues a No-Cause Determination and Dismissal and provides the Charging Party with a Delaware Right to Sue Notice.

This No Cause determination is based on the following facts:

In this discrimination case, Charging Party must demonstrate that he has a disability and that he informed Respondent of this disability. Charging Party must also show that Respondent was aware of his disability and need for an accommodation and failed to grant the accommodation regardless. Charging Party must further show that Respondent failed to accept his medical documentation to substantiate his medical leave and rather terminated his employment because of his disability. Charging Party can show this by demonstrating that he advised Respondent of his disability and requested an accommodation which was denied and resulted in Charging Party having to take a medical leave. He can show this by demonstrating that he was treated more harshly and the policies regarding medical leave were applied more harshly towards Charging Party because of his disability. The evidence and information provided during the investigation revealed that Respondent did provide accommodations to Charging Party's disability but that even with the accommodations Charging Party was unable to perform the essential functions of his position. The evidence and information further indicates that because of this inability, Charging Party was placed on an approved medical leave. The evidence demonstrates that Charging Party had been on medical leave more than once during his tenure with Respondent and was well versed in the policies and knew what was expected of his to remain on medical leave. Finally, the evidence and information provided demonstrates that Charging Party failed to adhere to policies surrounding a continued approved medical leave and therefore his employment was ended. Charging Party's witnesses failed to corroborate his allegations and he did not provide any supportive documentation to demonstrate disability discrimination. Therefore, Charging Party has failed to establish illegal disability discrimination occurred.

See the attached Notice of Rights.

This Final Determination is hereby issued on behalf of the Department of Labor, Division of Industrial Affairs, Discrimination Program.

_____5/31/0?_____                        _For JKC_ _Thur J. Sm.k_
Date issued                              Julie Klein Cutler, Administrator

*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilmington, DE 19802*

17C_DDOL_C-12-NC - No Cause Determ_DOC: 3/06

A000016

## NOTICE OF DELAWARE RIGHTS

*The Department of Labor Discrimination Unit provides the following excerpt from 19 Del. C. § 710, et seq. as information regarding the Delaware Right to Sue Notice. If you need legal advice, please seek your own legal counsel.*

**§ 714. Civil action by the Charging Party; Delaware Right to Sue Notice; election of remedies.**

(a)     A Charging Party may file a civil action in Superior Court, after exhausting the administrative remedies provided herein and receipt of a Delaware Right to Sue Notice acknowledging same.

(b)     The Delaware Right to Sue Notice shall include authorization for the Charging Party to bring a civil action under this Chapter in Superior Court by instituting suit within ninety (90) days of its receipt or within ninety (90) days of receipt of a Federal Right to Sue Notice, whichever is later.

(c)     The Charging Party shall elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation. A Charging Party is barred by this election of remedies from filing cases in both Superior Court and the federal forum. If the Charging Party files in Superior Court and in a federal forum, the Respondent may file an application to dismiss the Superior Court action under this election of remedies provision.

## NOTICE OF FEDERAL RIGHTS

1.     If your case was also filed under federal law and resulted in a "No Cause" finding, you have additional appeal rights with the Equal Employment Opportunity Commission. Under Section 1601.76 of EEOC's regulations, you are entitled to request that EEOC perform a Substantial Weight Review of the DDOL's final finding. To obtain this review, you must request it by writing to EEOC within *15 days of your receipt* of DDOL's final finding in your case. Otherwise, EEOC will generally adopt the DDOL's findings.

2.     If your case was also filed under federal law, you have the right to request a federal Right to Sue Notice from the EEOC. To obtain such a federal Right to Sue Notice, you must make a written request directly to EEOC at the address shown below. Upon its receipt, EEOC will issue you a Notice of Right to Sue and you will have ninety (90) days to file suit. The issuance of a Notice of Right to Sue will normally result in EEOC terminating all further processing.

3.     Requests to the EEOC should be sent to:

Equal Employment Opportunity Commission
The Bourse, Suite 400
21 S. Fifth Street
Philadelphia, PA 19106-2515

*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilmington, DE 19802*

17C_DDOL_C-13 Notice of Rights_DOC : 3/06

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: David Smiley<br>1956 Seneca Road<br>Wilmington, DE 19805 | From: Philadelphia District Office - 530<br>21 South 5th Street<br>Suite 400<br>Philadelphia, PA 19106 |
|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR § 1601.7(a)) |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 17C-2005-00503 | Charles Brown, III,<br>State & Local Coordinator | (215) 440-2842 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|   | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
|   | Your allegations did not involve a disability as defined by the Americans with Disabilities Act. |
|   | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
|   | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge. |
|   | Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge. |
|   | While reasonable efforts were made to locate you, we were not able to do so. |
|   | You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged. |
|   | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| X | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
|   | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Marie M. Tomasso_                                                      October 4, 2006

| Enclosure(s) | Marie M. Tomasso,<br>District Director | (Date Mailed) |
|---|---|---|

cc: DAIMLER CHRYSLER CORP
Lori Otis, EEO Consultant
Corporate Diversity Office
1000 Chrysler Drive
Auburn Hills, MI 48326

A000018

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAVID A. SMILEY,                    )
                                    )
        Plaintiff,                  )
                                    )        C.A. No. 1:07-005-SLR
    v.                              )
                                    )
DAIMLER CHRYSLER,                   )
                                    )
        Defendant.                  )
                                    )

## AFFIDAVIT OF STEVE HEITZMANN

STATE OF DELAWARE          )
                           ) ss.
COUNTY OF NEW CASTLE       )

      I, Steve Heitzmann, being duly sworn this $13^{+h}$ day of May, 2008, do depose and say:

      1.    My name is Steve Heitzmann. I am currently employed by Chrysler LLC ("Chrysler") as the Human Resources Manager for the Newark Assembly Plant. During the 2004-06 time period, I worked as the Labor Relations Supervisor. I have been employed with Chrysler for 22 years.

      2.    As the Labor Relations Supervisor, I was responsible for working with United Auto Workers Local 1183 ("union") officials in the development of joint policies, resolving employee grievances, administering the terms of the Collective Bargaining Agreement and other negotiated agreements, and handling various other issues with respect to union-management relations.

3.      I have knowledge about the PQX placement process. "PQX" stands for "physically qualified with limitations," and PQXs are Chrysler's codes corresponding to various medical restrictions. The PQX Placement Committee is a joint team of union and management officials responsible for determining appropriate placements for individuals whose medical restrictions prevent them from performing their regular jobs. Through this process, Chrysler seeks to return physically qualified employees to work consistent with their seniority per the terms of the Collective Bargaining Agreement.

4.      In considering an individual's ability to reinstate to work, the PQX Placement Committee analyzes whether any of the positions then available at the plant would be appropriate for the individual to perform given his or her seniority, department, and medical restrictions. The Committee recommends a work assignment, then a medical professional such as the plant physician or the OSHA nurse verifies that the proposed position would be compatible with the individual's medical restrictions. In 2005, Mr. Smiley was placed in an alternative position through the PQX Placement process. The documentation from the PQX Placement Committee regarding Mr. Smiley, which shows his seniority date, last day worked, restrictions, and alternative placement, was located in his personnel file.

5.      After Mr. Smiley was terminated from employment, he filed a grievance. I was involved in the initial phases of Mr. Smiley's grievance, although I do not recall many specifics about it. The grievance documentation in Mr. Smiley's file makes clear, however, that Chrysler's management team decided to deny the grievance because Mr. Smiley clearly failed to follow the proper procedures for substantiating his absence, even after being given a second chance to do so. After discussions with Mr. Smiley's union representatives, the management team at Chrysler agreed to reinstate Mr. Smiley's employment. Mr. Smiley's union

2

A000020

representative sent him a letter informing him of the joint decision and requesting that he contact the union within five days to discuss his reinstatement. This letter also was located in Mr. Smiley's file. Despite Chrysler's agreement to reinstate him, Mr. Smiley did not return to work at Chrysler.

6.    On August 2, 2005, Mr. Smiley filed a Charge of Discrimination with the Delaware Department of Labor and has now filed this lawsuit, claiming that Chrysler discriminated against him based on a disability. These allegations are false.. I do not believe Mr. Smiley was the victim of discrimination based on any alleged disability or any other protected characteristic.

_____                    _5/13/08_
Steve Heitzmann                                    Date

SWORN TO AND SUBSCRIBED before me the day and year above written.

_____
Notary Public

CAREY M. SHEA
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires May 24, 2011

3

(Labor Relations Copy) Dispose of only in accordance with company rules and procedures.    Grievance Form

| LOCAL NO. | DISTRICT NO. | UNIT NO. | DATE | GRIEVANCE NO. |
|---|---|---|---|---|
| 1183 | | | | 2005 - 140 |

| PLANT | | LOCATION CODE | GRIEVANCE CODE | FINAL DISPOSITION STEP | MO · DAY · YEAR | CLASS NUMBER |
|---|---|---|---|---|---|---|

| GRIEVANT-LAST NAME, INITIALS | DEPT. NUMBER | CLOCK NO. | SHIFT | ADEF SECTION SUBSECTION | PAR PAGE ATTACH |
|---|---|---|---|---|---|
| SMILEY, D. | 9110 | 241681 | 2 | | |

| SENIORITY (MO. / DAY /YR) | RATE | CLASS TITLE AND / OR NUMBER |
|---|---|---|
| 4/6/89 | 26.30 | Assembler |

NATURE OF GRIEVANCE

Unjust Discharge

| CONTRACT SECTION OR LOCAL AGREEMENT INVOLVED, IF ANY | Total grievants in this matter. (If more than one, list complete group on reverse) |
|---|---|

| DISCUSSION 1 | Date Held: Nugust 05 | Mgt. Rep. Name: J. ASQUITH | Union Rep. Name: J. Mehalchick |
|---|---|---|---|
| DISCUSSION 2 | Date Held: Nugust 05 | Mgt. Rep. Name: S. HEITZMAN | Union Rep. Name: J. Mehalchick |

STATEMENT OF GRIEVANCE (include dates, times, parties involved, etc. If a claim of discrimination is alleged, written evidence setting forth facts must be attached.)

We the union charge management with the above violation on 5/13/05 employee D. Smiley was unjustley discharged.

ADJUSTMENT REQUESTED

We the union demand that this violation stop immediately and bring employee D. SMILEY back with a clear record and full pay

(continue on reverse if necessary)

MANAGEMENT'S ANSWER (include facts taken into account)

Management finds no violation in this instance employee Smiley reported to plant personnel in response to a letter from personnel to substantiate his absence. Employee Smiley responded but did not follow the proper procedures for substantiation. Employee Smiley was issued a substantiation denial form and awarded the opportunity to provide the necessary documentation. Employee Smiley failed to follow established procedures and was therefore separated by employment. This grievance and its demands are denied.

CHRYSLER 097

(continue on reverse if ne)

| | SIGNATURE | GRIEVANCE PRESENTED BY UNION REP. | DATE | SIGNATURE | GRIEVANCE RECEIVED BY MGT. REP. | DATE |
|---|---|---|---|---|---|---|
| | | Carl Mehant IV | 5/18/05 | | | 5/18/0 |
| | | ANSWER RECEIVED BY UNION REP. | DATE | | ANSWER PRESENTED BY MGT. REP. | DATE |
| | | Carl Mehant IV | 5/20/05 | | | 5/20/0 |

84-170-1623 (REV. 4/2000) DaimlerChrysler Corporation

04/11/2008  10:44    6154437697                    REGION 8 UAW LEBANON          PAGE  01/02
  04/11/2008  10:26    4102    510        REG8 UAW                    PAGE  03
    04/11/2008  11:20    302    J9564      LOCAL 1183    C  y  McPherson    PAGE  02/03

## UNITED AUTOMOBILE • AEROSPACE • AGRICULTURAL IMPLEMENT WORKERS of AMERICA (UAW)

**LOCAL UNION 1183**
698 OLD BALTIMORE PIKE • NEWARK, DELAWARE 19702
PHONE: (302) 738-4500 • FAX: (302) 738-9564

JAMES J. FISHER
PRESIDENT

RICHARD "MACK" McDONAUGH, JR.
VICE PRESIDENT

WANDA SALVATELLI
RECORDING SECRETARY

D. MICHAEL GUSEMAN
FINANCIAL SECRETARY-
TREASURER

April 3, 2006

Mr. David Smiley
1956 Seneca Road
Wilmington, Delaware 19805

Dear Brother Smiley,

It is critical that you contact me within five (5) days on receipt of this letter in reference to your continued employment at the Daimler Chrysler Assembly Plant in Newark, Delaware.

Per our conversation dated Monday February 13, 2006, I had informed you that the Union and Management had reached a comparable decision on your behalf for your reinstatement of employment.

Please contact me to address this issue @ 302-453-5596 or the Union Hall @ 302-738-4500 within the time period stated above.

In Solidarity,

John Mahalshick IV
Committeeman District 1
UAW Local 1183

A000023

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. David Smiley
1956 Seneca Road
Wilmington DE. 19805

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery

David A. Smiley

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)     7001 1740 0005 1202 7308

PS Form 3811, August 2001     Domestic Return Receipt     102695-02-M-1940

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

7001 1740 0005 1202 7308

| | |
|---|---|
| Postage | $ .39 |
| Certified Fee | 2.40 |
| Return Receipt Fee (Endorsement Required) | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 4.64 |

Sent To
DAVID SMILEY
Street, Apt. No.; or PO Box No.
1956 SENECA ROAD
City, State, ZIP+4
WILMINGTON DE 1985

PS Form 3800, January 2001     See Reverse for Instructions

A000024

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID A. SMILEY | : | |
| | : | |
| Plaintiff, | : | C.A.No.: I:07-005-SLR |
| | : | |
| v. | : | |
| | : | |
| UNITED AUTOMOBILE, | : | |
| AGRICULTURAL AND AEROSPACE | : | |
| IMPLEMENT WORKERS UNION, | : | |
| UAW LOCAL 1183 | : | |
| | : | |
| Defendant | : | |

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the APPENDIX TO DEFENDANT UAW LOCAL 1183'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT to be electronically filed with the U.S. District Court District of Delaware via CM/ECF (Official Court Electronic Document Filing System) with copies of this document being served on the below listed persons on the date and in the manner listed below:

**UPS Overnight Mail:**          David A. Smiley, *pro se*
814 Village Circle - Apartment B
Newark, DE   19713

**Electronic Mail:**        Jennifer Gimler Brady, Esquire (I.D. No. 2874)
jbrady@potteranderson.com
Jennifer Wasson, Esquire (I.D. No. 4933)
jwasson@potteranderson.com
Potter, Anderson and Corroon, LLP
Hercules Plaza - 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE   19899-0951

**LAW OFFICES OF JOSEPH J. RHOADES**
By:  /s/ JOSEPH J. RHOADES, ESQUIRE
Joseph J. Rhoades, Esquire (ID No. 2064)
*Attorney for Defendant*

**Dated:    July 15, 2008**