IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DAVID A. SMILEY,                          )
                                          )
              Plaintiff,                  )
                                          )
      v.                                  ) Civil Action No. 07-05-SLR
                                          )
DAIMLER CHRYSLER and                      )
UAW LOCAL 1183,                           )
                                          )
              Defendants.                 )

---

David A. Smiley, Newark, Delaware. Pro se Plaintiff.

Jennifer Gimler Brady and Jennifer Catherine Wasson, Esquires, Potter Anderson & Corroon, LLP, Wilmington, Delaware. Counsel for Defendant Daimler Chrysler.

Joseph J. Rhoades and Allen Dale Bowers, II, Esquires, Law Office of Joseph Rhoades, Esq., Wilmington, Delaware. Counsel for Defendant UAW Local 1183.

---

**MEMORANDUM OPINION**

Dated: December *11* , 2008
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff David A. Smiley ("plaintiff"), who proceeds pro se and has been granted
leave to proceed in forma pauperis, filed this action against Daimler Chrysler
("Chrysler") alleging employment discrimination in violation of Title VII of the Civil Rights
Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5, and against UAW Local 1183 ("UAW") for
violations of 42 U.S.C. § 2000e-2, A(1), C(1), (2), and (3).  Now before the court are the
parties' cross-motions for summary judgment.  (D.I. 44, 45, 61)  For the reasons set
forth below, the court will deny plaintiff's motion for summary judgment and will grant
defendants' motions for summary judgment.

## II. BACKGROUND

Plaintiff alleges that Chrysler violated the Americans with Disability Act ("ADA"),.
42 U.S.C. § 12101, *et seq.*, by failing to accommodate his disability and in terminating
him as a result of his disability.  (D.I. 2)  Plaintiff alleges that the UAW violated 42
U.S.C. § 2000 *et seq.* and 19 Del. C. § 710 when it breached its duty of fair
representation and discriminated against him on the basis of race.[1]  (D.I. 34, 44)

Plaintiff began his employment with Chrysler on April 6, 1989, and was
terminated effective May 13, 2005. He was a member of the UAW and worked as a
door fitter in the body shop, a "Tech. 1" position.  (D.I. 47, A142-144, A151)  Plaintiff
sustained a work related injury to his right elbow in September 2003.[2]  (*Id.* at A40)

---

[1]Plaintiff references 19 Del. C. § 710 for the first time in his motion for summary
judgment.  Section 710 contains the definitions for Delaware's Discrimination in
Employment Act, 19 Del. C. §§ 710-718.

[2]Employee records indicate that plaintiff presented to Chrysler's nurse on
September 26, 2003  with complaints of right elbow pain.  (D.I. 47, A258)

Plaintiff testified that the day of his injury is the day he became disabled.[3]   (*Id.* at A42)
Plaintiff was diagnosed with right lateral epicondylitis.[4]   (*Id.* at A270)   Following his
injury, plaintiff switched from a regulation hammer to a light hammer, in order to perform
his job as a right side door fitter.   (*Id.* at A54)   He worked intermittently following the
injury up until his termination.   (*Id.* at A52)

      Plaintiff began medical leave on July 8, 2004.   (*Id.* at A256)   While out on
medical leave, he underwent an independent medical examination performed by Dr.
Jeffrey S. Meyers ("Dr. Meyers").   (*Id.* at A266-270)   Dr. Meyers concluded that plaintiff
could return to work with restrictions.   (*Id.* at A270).   Chrysler's plant physician agreed
with Dr. Meyers' conclusions.   (*Id.* at A259)   Thereafter, the PQX committee, with input
from an OSHA nurse and Chrysler's safety department, determined that plaintiff could
perform the alternative position of a left fender installer, a "Tech. 2" position.[5]   (*Id.* at
A61-A62, A67, A144-147, A156, A250, A272)   When plaintiff was assigned to this
position in February 2005, he was restricted to lifting fifteen pounds with no repetitive
twisting of the wrist and elbow.   (*Id.* at A62, A67, A256)   Plaintiff acknowledged that the

---

[3]Plaintiff filed a claim for workers' compensation benefits in February 2004.   (D.I.
47, A263)

[4]Epicondylitis is an inflammation or damage to the area of an epicondyle of bone.
An epicondyle is a projection of bone above a condyle (a rounded prominence at the
end of a bone, usually where the bone connects to another bone) where ligaments and
tendons are attached.   A common type of epicondylitis is tennis elbow, also known as
lateral epicondylitis, which is an overuse injury to the area of the lateral (outside)
epicondyle of the elbow end of the upper arm bone (humerus).   www.MedicineNet.com.

[5]PQX stands for physically qualified with limitations.   The PQX placement
committee is a joint team of union and management officials responsible for determining
appropriate placements for individuals whose medical restrictions prevent them from
performing their regular jobs.   (D.I. 47, A250)

PQX committee considered an accurate list of his medical restrictions.[6] (*Id.* at A67) The new assignment did not change plaintiff's salary or seniority. (*Id.* at A144-147).

The left fender installer position required the use of a plunging tool, weighing approximately five pounds, to attach a fender, weighing approximately fifteen pounds, to the frame of a vehicle. (*Id.* at A69-A73) Plaintiff was instructed to report to the alternate position on February 9, 2005. (*Id.* at A272) Plaintiff did not object to the job assignment. (*Id.* at A66)

Plaintiff testified there was an issue or problem with the job because he is right handed and he continued to use his arm, but he did not tell anyone about the problem. (*Id.* at A73, A76) Plaintiff worked at the left fender installer job approximately one week before he began to have swelling. (*Id.* at 74) He returned to his physician who placed him on another medical leave. (*Id.* at A75) At no time did plaintiff ask to be placed in a different or alternate position. (*Id.* at A75, A76) Also, plaintiff testified that he did not know if there were other "Tech 1" jobs available that he could have performed. (*Id.* at A151-152)

While on medical leave, plaintiff was scheduled to see a plant physician on May 4, 2005, but he missed the appointment. (D.I. 44, ex.) Chrysler sent plaintiff a certified letter, dated May 6, 2005, requiring him to appear at the plant no later than May 13, 2005. (D.I. 47, A278) The letter asked plaintiff to substantiate all medically related

---

[6]On February 14, 2005, plaintiff was examined by Chrysler's plant physician who noted only a fifteen pound lifting restriction. (D.I. 47, A259)

absences from February 18, 2005 to May 13, 2005.[7] (*Id.*)  The letter advised plaintiff that if he did not submit the required evidence, his seniority would be terminated. (*Id.* at A278)

Plaintiff arrived at the Chrysler plant the morning of May 13, 2005.  He submitted photocopies of his original medical records to human resources employee Dawn Ford ("Ford"). (*Id.* at A99)  Ford is authorized to discharge employees who fail to properly substantiate their absences. (*Id.* at 247)  Ford advised plaintiff that he was required to submit original medical records. (*Id.* at A104)  She noted that the photocopied records did not contain the proper "DX" (i.e., diagnosis) code. (*Id.* at A101)  Ford explained to plaintiff that he was required to submit original medical records with a DX code that day by 3:00 p.m. (D.I. 44, ex.)  Plaintiff testified that Ford never told him that he needed to bring in his original notes, but he did tell her that his originals were at home. (D.I. 47, A99, A123, A162)  Ford states that she asked for plaintiff's original documents. (*Id.* at A254)  Plaintiff did not discuss his medical condition with Ford. (*Id.* at A171-A172)

At the time, Ford did not have a substantiation form available so she gave plaintiff a modified reinstatement denial form. (*Id.* at A102, A280, A246)  Ford wrote the requirements applicable to plaintiff's substantiation on the reinstatement denial form and crossed out the requirements that did not apply to him. (*Id.* at A246) The modified form required plaintiff to provide documentation with a diagnosis or diagnostic code,

---

[7]Under Chrysler's absence policy, individuals on medical leave are required to report to the plant medical department for periodic examinations with the plant physician.  When an employees misses an appointment with the plant physician, a letter is sent instructing the employee to report to the personnel department to substantiate the employee's absences with documentation from their physician. (D.I. 47, A243)

statement of total disability, return to work date or an estimated return to work date, and original notes. (D.I. 44, ex.) Ford asked plaintiff to sign/initial the form, but he refused because it was an altered form. (D.I. 47, A102-103, A122, A124, A126, A140, A165, A246)

Plaintiff left the plant for his physician's office to obtain the necessary information. His doctor was not present, but an employee placed the proper DX code on plaintiff's original photocopied notes.[8] (*Id.* at A106, A108) Plaintiff returned to the plant and left the photocopied medical records with human resources employee Angenella Fleming and asked her to give them to Ford who was unavailable.[9] (*Id.* at A111, A113, A247) Plaintiff testified that he could not get new originals because his doctor was not in and if the notes were reissued there would be a different signature. (*Id.* at A110) Later that day plaintiff telephoned human resources and his call was sent to voice mail, but he did not leave a message. (*Id.* at A168) Plaintiff testified that he needed to speak to an individual, not voice mail. (*Id.*) Ford reviewed the documents and saw that they were photocopies. (*Id.* at A247) She waited until 3:00 p.m. that day to see if plaintiff would return with required original documentation, but he did not. (*Id.*)

The same day Ford authored a memorandum to the plant human resources department regarding the day's events with plaintiff. (D.I. 44, ex.; D.I. 47, A247, A281) The letter states that plaintiff "was not given 24 hours [to provide original medical

---

[8]Plaintiff's position is that the photocopies are original medical records because they are copies of the original medical records.

[9]The records were a photocopy of a photocopy that had the original DX code. (D.I. 47, A121, A129)

records] due to fact that he already was given 5 days to report and present the requirements to the personnel office.  He was well aware of the procedures and he was taken [sic] advantage of them."  (D.I. 47, A281)  Ford states that she determined termination was appropriate because plaintiff had been given two opportunities to comply with the substantiation policy and refused to do so without explanation.  (*Id.* at A247)  When she terminated plaintiff, Ford did not know what kind of injury or illness plaintiff had, or why he was absent from work on medical leave.  (*Id.*)

Later, plaintiff called in to make sure human resources had the required documentation, discovered that his seniority had been terminated on May 13, 2005, and was told to contact his union shop steward.  (*Id.* at A120, A121, A129)  The same day he contacted his union shop steward, John Mehalshick ("Mehalshick"), and requested that the union file a grievance on his behalf.  (*Id.* at A174-A176)  Plaintiff does not recall what kind of relief he sought.  (*Id.* at A185)  Mehalshick told plaintiff that he had been told that Ford stated plaintiff had forged a document.  (*Id.* at A177, A179)  On May 16, 2005, plaintiff received a letter dated May 13, 2005, stating that he was terminated effective May 13, 2005.  (*Id.* at A282)  The letter states that plaintiff's seniority was terminated as a result of his failure to report as instructed.  (*Id.*)  Plaintiff was off work and receiving worker's compensation benefits at the time of his termination.  (*Id.* at A36)

As requested, the union filed a grievance on plaintiff's behalf, dated May 18, 2005.  (*Id.* at A283)  The grievance form states that the nature of the grievance was an "unjust discharge."  (*Id.* at A194, A283)  The grievance states that "the union demand that this violation stop immediately and bring employee D. Smiley back with a clear

record and full pay." (*Id.* at A185, A283)  Around May 20, 2005, during phase 1 of the

grievance process, management denied the grievance on the ground that plaintiff "failed

to follow established procedures and was therefore separated [from] employment." (*Id.*

at  A186-A187, A283)

Plaintiff testified that he attempted to contact other union officials during the

grievance process, but received no responses. (*Id.* at A190-A191)  He testified that he

did not hear from the union until a year later. (*Id.* at A174)  Plaintiff spoke to Mehalshick

at some point in time and was told "they were working on it" and "might be able to get

[plaintiff] back.[10] (*Id.* at A188, A189)  A few weeks later, in early April 2006, plaintiff

received a letter dated April 3, 2006, indicating that a compromise decision on plaintiff's

behalf for reinstatement had been reached. (*Id.* at A188, A193-A194, A276)  The letter

referred to a February 13, 2006 conversation between plaintiff and Mehalshick. (*Id.* at

A199, A276)  Plaintiff testified that he did not have a specific recollection of the

conversation. (*Id.*)  The letter gave plaintiff five days to contact Mehalshick. (*Id.* at

A194)  Plaintiff telephoned Mehalshick but did not reach him. (*Id.*)  Plaintiff testified that

if Mehalshick called him back, he did not leave a message. (*Id.* at A195)  Plaintiff did

not pursue the issue. (*Id.* at A198)

Plaintiff testified that when he did not hear from the UAW, he submitted an

EEOC charge of discrimination against Chrysler. (*Id.* at A201)  The EEOC charge was

submitted on August 2, 2005 against Chrysler alleging disability discrimination under the

ADA. (*Id.* at A284)  By the time plaintiff received the UAW's April 2006 letter, he was in

---

[10]Plaintiff testified that there may have been other contacts with Mehalshick. (D.I.
47, A191)

the middle of the EEOC process and decided to pursue his case through the EEOC. (*Id.* at A201)

Plaintiff has been employed since his termination.  He was employed in 2006 for a tax preparation company as a manager during the tax season (on average thirty hours per week) and for two months as a district salesperson for a furniture company (forty hours per week).  In 2007, plaintiff was employed for two months for a car dealership in loss mitigation.  (*Id.* at A22-25)  As of April 9, 2008, plaintiff continued to receive workman's compensation benefits for a temporary disability.  (*Id.* at A20)  Plaintiff testified that his left arm "still works fine."  (*Id.* at A40)  His right elbow was swollen for a number of years, but the swelling has finally gone down.  (*Id.* at A42.)  At the time of his April 9, 2008 deposition, plaintiff continued with therapy.  (*Id.*)

Plaintiff testified during his deposition that his only claims against Chrysler are under the ADA for failure to accommodate and wrongful discharge.  (*Id.* at  A229, A231-232)  The basis for his failure to accommodate claim is that he was placed on the left fender install position, a job that "reaggravated" his preexisting right elbow condition. (*Id.* at A89, A131)  Plaintiff testified it was not really an accommodation because he was required to use his right hand even though he had a right elbow injury.  (*Id.* at A142)

Plaintiff testified that his termination was discriminatory because Ford modified the substantiation/reinstatement form, and he was not afforded twenty-four hours to provide the medical records to substantiate his absence due to his disability.  (*Id.* at A157, A171)  He opined that Ford was the person who discriminated against him.  (*Id.* at A167)

-8-

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment

-9-

as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff. *Revis v. Slocomb Indus.*, 814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987)).

## IV. DISCUSSION

Plaintiff moves for summary judgment on the grounds that he has met the requirements of a prima facie case of discrimination. Plaintiff's motion discusses employment discrimination on the basis of race, equal protection, retaliation under 42 U.S.C. §§ 1981 and 1981a, and breach of the implied covenant of good faith and fair dealing pursuant to Delaware state law. It is unclear if plaintiff moves for summary judgment against one or both defendants. Regardless, the only claims before this court as alleged by plaintiff are that Chrysler violated the ADA by its failure to accommodate and wrongful discharge of plaintiff and that the UAW breached its duty of fair representation and discriminated against plaintiff on the basis of race. The court will not entertain any new issues now raised by plaintiff in his motion for summary judgment.[11]

Chrysler moves for summary judgment on the grounds that plaintiff does not have an ADA qualifying disability, he has no claim for failure to accommodate, and his termination does not constitute disability discrimination. (D.I. 46) The UAW moves for

---

[11]Plaintiff previously sought, and was denied, leave to amend to add conspiracy and retaliation claims. *See* D.I. 26.

-10-

summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies, his fair representation claims are untimely, plaintiff had no right to have his grievance heard by an arbitrator, it did not discriminate against plaintiff, and plaintiff's state tort claims are preempted by federal law. (D.I. 62) Plaintiff responds that there are material facts in dispute and, therefore, defendants' motions should be denied.

## A. ADA

Chrysler argues that it is entitled to summary judgment because plaintiff cannot demonstrate that he is disabled. More particularly, it contends that plaintiff has presented no evidence to demonstrate that his elbow injury substantially limits any major life activities, including working. Finally, Chrysler argues that plaintiff was terminated because he failed to comply with its substantiation policy, not on the basis of any alleged disability.

Plaintiff argues that he is entitled to summary judgment because he has made a prima facie case of discrimination. As noted, plaintiff's motion for summary judgment speaks to race discrimination, not disability discrimination. Plaintiff responds to Chrysler's motion by arguing that he is limited in the major life activity of working and has a disability since he is restricted in his ability to perform a "class" of job.

In order to establish a claim under the ADA, a plaintiff must first establish that he "(1) has a 'disability' (2) is a 'qualified individual' and (3) has suffered an adverse employment decision because of that disability." *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006) (citing *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 (3d Cir. 2002); *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). If a plaintiff meets this initial burden, the court must then determine whether the plaintiff has

-11-

put forth direct or circumstantial evidence of discrimination.  If the plaintiff has put forth

direct evidence of discrimination, the court uses a "mixed motive" theory, meaning that

"a plaintiff need only show that the unlawful motive was a 'substantial motivating factor'

in the adverse employment action." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d

183, 187 (3d Cir. 2003) (citations omitted).  If, however, the plaintiff has put forth

circumstantial evidence of discrimination, the court uses a pretext theory, which

incorporates the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973).  *Lawrence v. National Westminster Bank N.J.*, 98 F.3d 61, 68 (3d Cir.

1996) (in ADA cases, courts are to apply the Title VII burden-shifting rules).

Under the *McDonnell Douglas* burden-shifting analysis, once the plaintiff has

established a prima facie case of discrimination, the burden of production switches to

the defendant, who must "articulate some legitimate, nondiscriminatory reason" for the

adverse employment decision.  *McDonnell Douglas*, 411 U.S. at 802.  If the defendant

produces sufficient reasons for its actions, the burden switches back to the plaintiff to

demonstrate that the defendant's reasons are merely a pretext for discrimination.

*Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).  To defeat a motion for summary

judgment under this framework, plaintiff must point to some evidence from which the

"factfinder could reasonably either (1) disbelieve the employer's articulated legitimate

reasons; or (2) believe that an invidious discriminatory reason was more likely than not

a motivating or determinative cause of the employer's action." *Id.* at 764.

### 1. Prima Facie Case

The ADA defines "the term 'disability' . . . , with respect to an individual," as:  (A)

a physical or mental impairment that substantially limits one or more of the major life

-12-

activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Plaintiff's elbow injury qualifies as a physical impairment. *Cella v. Villanova Univ.*, 113 Fed. Appx. 454, 455 (3d Cir. 2004). Accordingly, the court must determine whether the impairment substantially limited plaintiff in a major life activity.

Major life activities include "those activities that are of central importance to daily life" and includes functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *Toyota Motor Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002); *Sutton v. United Air Lines*, 527 U.S. 471, 480 (1999). During his deposition, plaintiff testified that he could perform a variety of daily living activities. He hugs his children, picks them up at times, cooks, cleans, drives, walks, stands, bathes, dresses himself, can twist his hips, and is fully capable of taking care of himself. He argues, however, that he is limited in performing a "class" of jobs, but provides nothing to the court to support his position.

Where the major life activity at issue is working, the term "substantially limited" is defined as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."[12] *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, (3d Cir. 1998); *Olson v. General Elec. Astrospace,* 101 F.3d 947, 952 (3d Cir. 1996) (citing 29 C.F.R. § 1630.2(j)(3)(i)). In making this determination, the court considers:

---

[12]The mere "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Deane v. Pocono Med. Ctr.*, 142 F.3d at 144 n.7.

-13-

(A) [t]he geographical area to which the individual has reasonable access;
(B) [t]he job from which the individual has been disqualified because of an
impairment, and the number and types of jobs utilizing similar training,
knowledge, skills or abilities, within that geographical area, from which the
individual is also disqualified because of the impairment (class of jobs); and/or
(C) [t]he job from which the individual has been disqualified because of an
impairment, and the number and types of other jobs not utilizing similar training,
knowledge, skills or abilities, within that geographical area, from which the
individual is also disqualified because of the impairment (broad range of jobs in
various classes).

*Id.* (citing 29 C.F.R. § 1630.2(j)(3)(ii)).

Plaintiff's deposition testimony contravenes his position that he is limited in

performing a "class" of jobs.  He has been employed elsewhere at different times during

the course of this litigation.  While plaintiff did not remain at any job for a significant

amount of time, nothing indicates that he stopped working as a result of his right elbow

impairment.  Hence, he has failed to make a showing that he is disabled pursuant to 42

U.S.C. § 12102(2)(A).  Based upon the foregoing, the court finds that plaintiff has not

established a prima facie case of disability discrimination.

### 2. Termination

Even if plaintiff had established a prima facie case of disability discrimination, his

claim against Chrysler fails.  Chrysler has articulated a legitimate, non-discriminatory

reason for terminating plaintiff's employment – plaintiff failed to follow the established

procedures of Chrysler's substantiation policy for employees absent on medical leave.

The evidence and documentation indicate that plaintiff was terminated after he violated

the substantiation policy, and nothing in the record contradicts Chrysler's proffered

reason for terminating plaintiff.

Although in dispute is whether Ford specifically told plaintiff he was required to

-14-

provide original medical records, it is clear from the record that Ford wrote the requirements applicable to plaintiff's substantiation on the reinstatement denial form and crossed out the requirements that did not apply to him. Plaintiff acknowledges that he refused to sign the form because it was an altered form. When plaintiff failed to return with the required original documentation, Ford prepared the memorandum for plaintiff's termination. Notably, Ford did not know why plaintiff was absent from work on medical leave or what kind of injury or illness he had.

Chrysler's proffered reason for its action is not weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find it unworthy of credence. *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 800 (3d Cir. 2003). Even construing the evidence in the light most favorable to plaintiff, he has not provided evidence from which a fact finder could either disbelieve Chrysler's articulated reason for termination, or believe that a discriminatory reason was more likely than not the cause of the employment action. Accordingly, the court will grant Chrysler's motion for summary judgment and deny plaintiff's motion for summary judgment on the issue of termination in violation of the ADA.

### 3. Accommodation

Chrysler also moves for summary judgment on the failure to accommodate issue. Plaintiff alleges that Chrysler failed to accommodate his disability because it placed him on the left fender install position, and the accommodation "reaggravated" his preexisting right elbow condition. He argues that Chrysler sought no input from him when it placed him in the left fender install position and he received little to no training for the position. Finally, he contends that Chrysler failed to make a "good faith" attempt at an

-15-

accommodation. As previously discussed, the record does not support a finding of disability under the ADA. Even if it did, the evidence does not support plaintiff's position that Chrysler failed to reasonably accommodate him.

Discrimination under the ADA includes failure by an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004) (citations omitted) To meet his litigation burden, plaintiff "need only show: (1) that there was a vacant, funded position; (2) that the position was at or below the level of the plaintiff's former job; and (3) that the plaintiff was qualified to perform the essential duties of this job with reasonable accommodation." *Williams,* 380 F.3d at 770. If he meets this burden, then Chrysler must demonstrate that transferring him would cause unreasonable hardship. *Id.* Whether a proposed accommodation is reasonable is a question of fact. *Turner v. Hershey Chocolate U.S.*, 440 F.3d at 611 n.4. At the outset, the court notes that plaintiff failed to meet his burden to show there were other reasonable accommodations that Chrysler could have or should have offered to him.[13]

A "qualified individual" is defined as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that

---

[13]Reasonable accommodations may take the form of "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

-16-

such individual holds or desires." *Turner*, 440 F.3d at 611 (quoting 42 U.S.C. §
12111(8); *Buskirk v. Apollo Metals*, 307 F.3d 160, 168 (3d Cir. 2002). "The
determination of whether an individual with a disability is qualified is made at the time of
the employment decision, and not at the time of the lawsuit." *Turner*, 440 F.3d at
611(citing *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998). Once the
qualified employee "has requested provision of a reasonable accommodation, the
employer must make a reasonable effort to determine the appropriate accommodation .
. . through a flexible, interactive process that involves both the employer and the
[employee]." *Williams*, 380 F.3d at 771 (citations omitted). An employee can show that
an employer breached its duty to provide reasonable a accommodation when it failed to
participate in the interactive process by demonstrating that: 1) the employer knew about
the employee's disability; 2) the employee requested accommodations or assistance for
his or her disability; 3) the employer did not make a good faith effort to assist the
employee in seeking accommodations; and 4) the employee could have been
reasonably accommodated but for the employer's lack of good faith." *Id.* (citation
omitted).

　　While not clear, plaintiff appears to argue that Chrysler failed in its duty under the
ADA to engage in the "interactive process." There is nothing in the record, however, to
suggest that plaintiff ever requested an accommodation or assistance for his disability.
Moreover, as will be discussed, the court finds that Chrysler made a good faith effort to
provide plaintiff an accommodation.

　　It is undisputed that plaintiff was medically precluded from performing the
essential functions of his normal position as a right side door fitter. After plaintiff had

-17-

been on medical leave for a period of time, the PQX committee considered his medical limitations and discussed possible alternative positions with the OSHA nurse and Chrysler's safety department. At that juncture, the PQX committee determined that plaintiff's medical restrictions allowed him to perform the position of a left fender installer and reassigned him to that position. Plaintiff admits that his medical restrictions were considered, he did not object when assigned to the position, and the position did not change his seniority or his pay. Unfortunately, the position proved to aggravate plaintiff's medical condition and, after a week, his physician determined that he was unable to perform the alternate position. At that point, plaintiff returned to medical leave where he remained until his termination. Based upon the facts before the court, it cannot be said that the accommodation was unreasonable or that Chrysler did not make a good faith effort to assist plaintiff in an accommodation.

Notably, at no time did plaintiff ask for an accommodation. Moreover, plaintiff failed in his burden to offer evidence there were other reasonable accommodations that Chrysler could have or should have offered to him. Accordingly, the court will grant Chrysler's motion for summary judgment and deny plaintiff's motion for summary judgment on the issue of failure to accommodate in violation of the ADA.

### B. Exhaustion of Administrative Remedies

Plaintiff amended his complaint on April 7, 2008 to add claims against the UAW, including race discrimination in violation of Title VII and the Civil Rights Act of 1967. The UAW moves for summary judgment of the Title VII claims on the grounds that plaintiff has failed to exhaust his administrative remedies. Additionally, the UAW contends that the time for filing a charge of discrimination against it has long passed.

-18-

Plaintiff responds that after he filed his EEOC charge, he received a right to sue letter, thus negating the UAW's claim that he failed to exhaust his administrative remedies. Plaintiff further argues that it was not until after the discovery process that he learned the union had filed a grievance on his behalf.

Title VII requires exhaustion of administrative remedies prior to filing suit in federal court. See 42 U.S.C. § 2000e-5(e)(1). The purpose of this requirement is to provide the EEOC the chance to "investigate, mediate and take remedial action with respect to a charge of discrimination." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976). The ambit of a civil complaint, once a right-to-sue letter is issued by the EEOC, is "'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of a charge of discrimination,' regardless of the actual scope of the EEOC investigation." Hicks v. ABT Assoc., Inc., 572 F.2d 960, 966 (3d Cir. 1978) (quoting Ostapowicz v. Johnston Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)). "[T]he relevant test for determining whether plaintiff must exhaust his administrative remedies, therefore, is 'whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.'" Waiters v. Parsons, 729 F.2d 233 (3d Cir. 1984); Ostapowicz, 541 F.2d at 398-9. Courts have allowed claims not specifically mentioned in the EEOC charge "where there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint." Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984); Ostapowicz, 541 F.2d at 398-99.

At no time has plaintiff filed an EEOC charge against the UAW. The record reflects that plaintiff filed a charge of disability discrimination against Chrysler on August

-19-

2, 2005. The charge of discrimination, however, does not mention either the UAW or race discrimination. The court concludes that there is not a close nexus between the race discrimination claim against the UAW and the facts supporting the claim in plaintiff's original EEOC charge. Plaintiff charged that he has a disability; was discriminated against when Chrysler failed to provide an accommodation for his disability; and Chrysler failed to accept plaintiff's medical documentation regarding the disability and terminated plaintiff because of his disability. The charges do not contain facts related to claims of discrimination based upon race by the UAW. Moreover, it appears that a reasonable investigation of the charges would not have encompassed that claim within its scope.

Finally, the time has long passed for plaintiff to file a charge of discrimination against the UAW. A Title VII plaintiff in a "deferral state" such as Delaware must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful conduct. *Lacy v. National R.R. Passenger Corp.*, 254 Fed. Appx. 934, 936 (3d Cir. 2007), *cert. denied*, –U.S.–, 2008 WL 2710638 (2008) (citing 42 U.S.C. § 2000e-5(e); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000); *Ohemeng v. Delaware State Coll.*, 643 F. Supp. 1575, 1580 (D. Del. 1986)). Plaintiff never filed a charge with the EEOC against the UAW. Even using April 3, 2006, the date of the UAW letter advising him of reinstatement, the time has long passed for plaintiff to file an EEOC charge. Accordingly, plaintiff is barred from raising his race discrimination claims.[14] For the

---

[14]The UAW also moves for summary judgment on the merits, and argues that the facts do not demonstrate it discriminated against plaintiff on the basis of race. Inasmuch as the discrimination claims against the UAW are time barred, the court will not address the issue, but notes that the UAW filed a grievance at plaintiff's request,

-20-

above reasons, the court will grant the UAW's motion for summary judgment and will

deny plaintiff's motion for summary judgment as to the Title VII race discrimination

claims.

### C. Duty of Fair Representation

Plaintiff alleges that the UAW breached its duty of fair representation by failing to

file a grievance, failing to investigate, providing ineffective representation, and failing to

arbitrate or providing notice to arbitrate. The UAW moves for summary judgment on the

grounds that the claim is untimely.

Plaintiff alleges that Chrysler unlawfully terminated his employment and the UAW

breached its duty of fair representation. In applying the limitations period set forth in

*DelCostello v. International Bhd. of Teamsters,* such lawsuits are considered "hybrid"

lawsuits and are governed by a six-month statute of limitations borrowed from Section

10(b) of the National Labor Relations Act ("NLRA"). *DelCostello,* 462 U.S. 151 (1983).

Generally, a duty of fair representation claim accrues, and the six month limitations

period commences, when "the futility of further union appeals becomes apparent or

should have become apparent." *Scott v. Local 863, Int'l Bhd. of Teamsters, Chauffeurs,*

*Warehousemen and Helpers of Am.*, 725 F.2d 226, 229 (3d Cir. 1984); *see Chatterjee*

*v. Philadelphia Fed'n of Teachers*, 214 Fed. Appx. 201, 205 (3d Cir. 2007). If, however,

a union purports to continue to represent an employee in pursuing relief, the employee's

duty of fair representation claim against the union will not accrue so long as the union

proffers "rays of hope" that the union can "remedy the cause of the employee's

---

and ultimately obtained a favorable outcome for plaintiff, only to have plaintiff reject the
decision.

dissatisfaction." *Childs v. Penn. Fed'n Bhd. of Maint. Way Employees*, 831 F.2d 429, 434 (3d Cir. 1987); *see also Whittle v. Local 641, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 56 F.3d 487, 490 (3d Cir. 1995); *Miklavic v. USAir, Inc.*, 21 F.3d 551 (3d Cir. 1994); *Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 261 n.11 (3d Cir. 1990). Under this scenario, it is irrelevant if an employee was aware of or, with reasonable diligence, should have discovered the acts constituting the breach at any time before rays of hope were extinguished. *See Childs*, 831 F.2d at 436; *Miklavic*, 21 F.3d at 556. "The fact pattern may vary from case to case, but clearly there comes a point when a union can no longer be said to proffer rays of hope to an employee, and the rays of hope are extinguished." *Bensel v. Allied Pilots Ass'n,* 387 F.3d 298, 308 (3d Cir. 2004).

The last contact plaintiff had with the UAW occurred on or about April 3, 2006, when the UAW notified plaintiff that it had reached a "comparable" decision on plaintiff's behalf for reinstatement of employment. Plaintiff's testimony indicates that he was not satisfied with the UAW's results as outlined in the April 3, 2006 letter and decided not to pursue the matter. *See* D.I. 47, A-183-201. It is apparent at that point, plaintiff's "rays of hope were extinguished."

Accordingly, the court finds that plaintiff's breach of the duty of fair representation claims against the UAW did not accrue until on or about April 3, 2006. Plaintiff, however, did not file the claim against the UAW until two years later, on April 7, 2008, well beyond the limitation period. For the above reasons, the court will grant the UAW's motion for summary judgment on the issue of the untimely filing of the fair representation claims and will deny plaintiff's motion for summary judgment on the issue

-22-

of good faith and fair dealing.

### D. Arbitration

Plaintiff makes passing allegations that the UAW breached its duty of fair representation when it failed to submit his grievance to arbitration and handled his grievance in a perfunctory manner. The complaint does not mention that the UAW negotiated a "comparable decision on [plaintiff's] behalf for [his] reinstatement of employment." (D.I. 47, A276)

The Supreme Court has held that, while a union "may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion," the individual employee does not have an "absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." *Vaca v. Snipes*, 386 U.S. 175, 191 (1967). "The duty of fair representation requires a union 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Marquez v. Screen Actors Guild*, 525 U.S. 33, 44 (1998) (quoting *Vaca*, 386 U.S. at 177). To prove a breach of the duty of fair representation, then, a plaintiff must show that the union's conduct was arbitrary, discriminatory or in bad faith. *Id.* A union's actions breach the duty under the "arbitrary" prong if they "can fairly be characterized as so far out of a 'wide range of reasonableness' that [they are] wholly irrational or arbitrary." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 77 (1991). The "wide range of reasonableness" standard allows the union to make discretionary judgments and decisions without fear of liability should those judgments ultimately be wrong. *Marquez*, 525 U.S. at 45-46. Finally, "mere ineptitude or negligence in the presentation of a grievance by the union"

-23-

is not the type of conduct intended to be included under the "arbitrary" standard. *Findley v. Jones Motor Freight*, 639 F.2d 953, 960 (3d Cir. 1981).

Plaintiff's claim that the UAW was required to submit his grievance to arbitration fails as a matter of law. The UAW did not ignore plaintiff's plight. Indeed, it procured a favorable outcome for plaintiff - reinstatement - yet plaintiff opted not to accept the decision. For the above reasons, the court will grant the UAW's motion for summary judgment on the issue of arbitration and will deny plaintiff's motion for summary judgment on the same issue.

### E. Preemption

Plaintiff alleges that "[b]ecause of the breach of contract by the leadership of the U.A.W. Local Union 1183, its agents and insurers I have suffered emotional distress and harm to my reputation also as a direct result of the inaction of the Defendants Daimler Chrysler Corporation, Union Local 1183 and its agents and insurers for its violation of title VII of the Civil Rights Act of 1964, and 42 U.S.C. 2000e-2, A(1), C(1)(2)(3)." (D.I. 34) The UAW interprets the breach of contract/causing emotional distress and harm to reputation claim as a "personal injury-type claim." It moves for summary judgment on the grounds that the claim is preempted by federal law.

Federal law governs actions for enforcement of collective bargaining agreements. Section 301 of the Labor Management Relations Act ("LMRA") "has been interpreted as authorizing federal courts to fashion a body of common law for the enforcement of collective bargaining agreements."[15] *Antol v. Esposto*, 100 F.3d 1111,

---

[15]Section 301 of the LMRA provides that, "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting

-24-

1115 (3d Cir. 1997) (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957)). "Section 301 preemption 'ensures that federal law will be the basis for interpreting collective bargaining agreements.'" *Id.* (quoting *Lingle v. Norge, Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988)).

"[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). A cause of action is preempted by § 301 when "[t]he duties imposed and rights established through the state tort . . . derive from the rights and obligations established by the [collective-bargaining] contract," and resolution of the dispute would therefore "inevitably . . . involve contract interpretation." *Id.* at 217-18. "[I]t would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212. Only state law claims "inextricably intertwined with considerations of the terms of the labor contract" are preempted. *Allis-Chalmers*, 471 U.S. at 213.

An employee's state claim for breach of his individual employment contract is not preempted. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987). The Third Circuit has interpreted *Caterpillar* as standing for the proposition that "employees have the

---

commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185(a).

option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state-law action as pleaded does not require interpretation of the collective bargaining agreement. *Voilas v. General Motors Corp.,* 170 F.3d 367, 373-74 (3d Cir. 1999) (citing *Caterpillar,* 482 U.S. at 394-95).

Liberally construing plaintiff's complaint, he raises a claim involving the rights or duties created by the UAW's collective bargaining agreement. Plaintiff alleges that the UAW breached the agreement and the breach caused him emotional distress and harm to his reputation. This claim raises a question relating to the interpretation of a labor agreement, and what legal consequences were intended to flow from the alleged breach of that agreement. *Livadas v. Bradshaw,* 512 U.S. 107, 122-23 (1994); Lueck, 471 U.S. at 211; *see also Kline v. Security Guards,* 386 F.3d 246 (3d Cir. 2004). Because disposition of the emotional distress and damage to reputation claims is not possible without analyzing and interpreting the terms of the collective bargaining agreement, the court finds that said claims are "inextricably intertwined" and, therefore, are preempted. *See also Guerrero v. Hovensa,* 259 Fed. Appx. 453 (3d Cir. 2007) (emotional distress claim required interpretation of collective bargaining agreement and was preempted by federal law)*; Cini v. National R.R. Passenger Corp.,* Civ. No. 99-2630, 2001 WL 1659264 (E.D. Pa. June 18, 2001) (emotional distress claim would require court to analyze and resolve question of whether defendants properly handled termination of plaintiff, which would necessarily involve interpretation of terms of collective bargaining agreement).

For the above reasons, the court finds that plaintiff's claims breach of contract claim is preempted by federal law. Therefore, the court will grant the UAW's motion for

-26-

summary judgment on this issue and will deny plaintiff's motion for summary judgment.

## V. CONCLUSION

Based upon the foregoing analysis, the court will deny plaintiff's motion for summary judgment and will grant Chrysler's and the UAW's motions for summary judgment. An appropriate order will issue.